BRANSTETTER *v.* BRANSTETTER.

Opinion delivered October 26, 1914.

1. PROBATE SALES—VOIDABLE SALE—REGULAR PROCEEDINGS—PRACTICE.— Where proceedings in a probate court, transferring the title to property are regular on their face, and only voidable, they have the effect of transferring the legal title, and will not be set aside, when in equity, the title is found to be where it should in equity, rest.

2.  STATUTE OF FRAUDS—PARTIAL PERFORMANCE—CONTRACT OF SALE OF
    LAND.—Testimony that A. agreed with B. to exchange certain lots
    for eighty acres of farm lands, and B. complied with the contract
    on his part by executing the deed to A. and that A. did not comply
    with the contract on his part because of his sudden illness and
    death; *held*, sufficient to take the contract of A. to convey the
    certain lots to B. out of the statute of frauds.

3.  STATUTE OF FRAUDS—PAROL CONTRACT OF SALE OF LANDS—PARTIAL
    PERFORMANCE.—The taking possession of land in pursuance of a
    contract of sale, together with payment in full, or in part, of the
    purchase price, is a sufficient part performance to take the contract
    out of the statute of frauds.

4.  EQUITY MAXIMS.—"Equity treats that as done which should have
    been done."

5.  EQUITY JURISDICTION—CANCELLATION OF DEED—EQUITIES OF THE
    PARTIES.—Where land was improperly transferred to appellant's
    father, through whom appellants claim title, under certain probate
    proceedings, equity will not cancel the deed in a suit by appellees
    who claim title through their ancestor, one A., when, had A. lived
    he would have been compelled to transfer the said property to
    appellants' father in pursuance of a contract between them.

Appeal from Arkansas Chancery Court; *John M. Elliott*, Chancellor; reversed.

*W. N. Carpenter* and *Sam Frauenthal*, for appellants.

1. The testimony clearly establishes the fact of the trade between S. M. Branstetter and A. O. Branstetter, and that the former took possession of the property after the trade was made and the execution by him of the deed to the latter for the 80 acre tract; that he collected rents thereof and made improvements thereon, some of the improvements being made during the life of A. O. Branstetter. All this was sufficient to take the contract out of the statute of frauds. 83 Ark. 403; 36 Cyc. 654.

2. The probate sale was made in the administration proceedings and was duly confirmed and deed made thereunder in October, 1902. Even though the sale was voidable, still the statute of limitations would apply. Kirby's Dig., § 5060; 68 Ark. 449; 76 Ark. 146.

Appellees are asking for the enforcement of an equitable right. Under the testimony it would be absolutely inequitable to allow them to retain the 80 acres deeded by S. M. Branstetter, and also to recover the land in controversy.

*R. D. Rasco* and *C. L. O'Daniel,* for appellees.

1. It appears from the evidence that the alleged contract and the part performance are not sufficient to take the case out of the statute of frauds. 23 Ark. 422; 63 Ark. 105, 106; 41 Ark. 100.

2. The probate court had no jurisdiction to transfer title to real estate in the method appellant's say was done in this case.

3. The proof shows that the wife of A. O. Branstetter did not sign the alleged contract nor agree to it in any way. Specific performance of a contract of sale of land will not be decreed where the wife was not a party to it. 24 L. R. A. 763, 768; 38 L. R. A. (N. S.) 1195.

WOOD, J. On the 3d of July, 1911, this suit was instituted by plaintiffs, appellees, against the defendants, appellants, to set aside a probate sale of certain lots in the town of DeWitt, and to have an accounting of the rents.

The plaintiffs were the children of A. O. Branstetter and the defendants were the children of S. M. Branstetter. The plaintiffs allege the death of their father, A. O. Branstetter, and that at the time of his death he was the owner of the lots in controversy; that S. M. Branstetter was the father of A. O. Branstetter and, at the death of the latter, was appointed administrator of his estate; that as such administrator, on the 16th day of August, 1902, by order of the probate court, he sold the lots in controversy, which we shall hereafter designate as "the lots," to pay the debts of the estate of A. O. Branstetter; that one Spratlin purchased the lots for the sum of $1,360.00; that Spratlin was not the real purchaser, and paid no consideration, but purchased at the request of S. M. Branstetter; that the sale was reported

to, and duly confirmed by the probate court, and deed made to Spratlin; that Spratlin conveyed the land to S. M. Branstetter, who entered into possession, and from that time on collected the rents. They allege that the pretended sale was fraudulent and void. They prayed that the deeds be set aside and that the defendant be required to account for the rents.

The defendants answered, denying that A. O. Branstetter was the owner of the lots. They allege that A. O. Branstetter was the son of S. M. Branstetter; that prior to the death of A. O. Branstetter he and his father, S. M. Branstetter, agreed to a division of their properties, by which A. O. Branstetter was to have the lots in controversy and that they should make deeds, respectively, to each other for the properties which they exchanged; that, in pursuance of the agreement, S. M. Branstetter did make and deliver a deed to A. O. Branstetter to the farm lands; that A. O. Branstetter became suddenly ill and died, and was, therefore unable to execute the deed conveying the lots in controversy to his father. They further allege that after the death of A. O. Branstetter, in order to obtain adjustment of the affairs between himself and his deceased son, S. M. Branstetter, instituted a suit against the widow and minor children, which, after proof had been taken, was settled by a compromise agreement by which S. M. Branstetter was to have judgment for certain sums, and was to receive title to the lots in controversy, for the sum of $1,360.00; that in order to pass the title to these lots, it was agreed that they should be sold by order of the probate court, and that the proceedings of the probate court, set up in the complaint, was the method adopted, according to this agreement, by which the title to the lots in controversy should be passed from the estate of A. O. Branstetter to S. M. Branstetter.

The defendant denied that the sale was contrary to law and that it was a fraud perpetrated against the plaintiffs. They allege that S. M. Branstetter acted in the utmost good faith, etc. They ask that their answer be

taken as a cross bill; allege that they were entitled to the land in controversy, and prayed that their title be quieted and that the probate sale, sought to be cancelled by the plaintiffs, be declared valid, and that the plaintiffs be forever barred from setting up any claim or title to the land.

The appellees contend that the sale of the lots in controversy, by the probate court, was in the due course of administration to pay the debts of the estate of A. O. Branstetter, deceased; and that the purchase of the same by Spratlin was void for two reasons: First, because he was appointed to appraise the lots; second, because his purchase was without consideration on his part, and in pursuance of an agreement between himself and S. M. Branstetter, the administrator of the estate of A. O. Branstetter, whereby he was to purchase the lots for the administrator, and that such purchase, being really for the administrator, rendered the same void.

On the other hand, appellant's complaint and evidence adduced in support of the allegations contained therein, show that their contention was that prior to the death of A. O. Branstetter, he and his father, S. M. Branstetter, had entered into an agreement to divide their properties, whereby S. M. Bransettter was to deed certain farm lands to his son, A. O. Branstetter, and that the latter, in consideration for this, should execute his deed to S. M. Branstetter for the lots in controversy; that S. M. Branstetter fulfilled the terms of the agreement on his part by executing his deed to A. O. Branstetter, and that the latter became suddenly ill and died before he was able to fulfill his part of the agreement to execute a deed to his father to the lots in controversy; and that, after his death, there was a dispute between S. M. Branstetter and one Thomas, who had married the widow of A. O. Branstetter and who was the stepfather and guardian of the minor children of A. O. Branstetter, as to what was due S. M. Branstetter from the estate of A. O. Branstetter; and that he had instituted suit and that by a compromise agreement between him and those

representing the estate of A. O. Branstetter, it was un-
derstood that he was to present his claims against such
estate, and that proceedings in the probate court, by
which the lots were sold, were in pursuance of such agree-
ment; that this was the method adopted by which to pass
the title out of the estate of A. O. Branstetter to S. M.
Branstetter, as per the agreement between them before
the latter's death.

The testimony taken to support these contentions is
exceedingly voluminous, and it is wholly unnecessary,
in the view we have of the record, to set it out and discuss
it in detail.

(1)    It suffices to say, that in our opinion, a decided
preponderance of the evidence supports the contention
of the appellants that the proceedings that were insti-
tuted in the probate court by S. M. Branstetter and the
sale and purchase of the lots was intended by the parties
to those proceedings as a method of transferring the
title of the lots from the estate of A. O. Branstetter to
S. M. Branstetter. These proceedings were, in all things,
regular on their face; but, notwithstanding this fact, the
proceedings were nevertheless voidable, for no such pro-
ceedings are authorized by the probate court as a method
of transferring the title to real estate. The specific per-
formance of contracts can not be carried out in this man-
ner, through the orders of the probate court. The pro-
ceedings, however, were not absolutely void, but only
voidable, and they had the effect to transfer the legal title
of the lots to S. M. Branstetter.

The only question, therefore, we have to decide is
whether or not the deed to S. M. Branstetter of the lots
made in pursuance of the order of the probate court
should be annulled and set aside.

Upon careful consideration of the testimony pre-
sented in the entire record, we are of the opinion that the
legal title to the lots in controversy is where it should be,
and the appellees, according to the clear preponderance
of the evidence, do not show any equities to justify a
court of chancery in annulling and setting the same aside.

A fair preponderance of the evidence shows that prior to the death of A. O. Branstetter he had entered into an agreement with his father, S. M. Branstetter, by which he was to deed the lots to his father in consideration of a deed that his father was to make to him of certain farm land; that the father, in pursuance of the agreement, executed the deed on his part to eighty acres of farm land; that the son became suddenly ill, and was physically unable to execute a deed, and died before executing the deed on his part to the lots; that the father, in pursuance of this agreement took possession of the lots before the death of the son and collected the rents therefrom a short time prior to the son's death.

One witness testified concerning this agreement, as follows: "S. M. Branstetter made the deed to A. O. Branstetter for the property that A. O. Branstetter was to get in this trade, but A. O. Branstetter died before he made the deed to S. M. Branstetter for the property that S. M. Branstetter was to get in this trade."

This witness testified that the purpose of the proceedings in the probate court was "to pass the title to S. M. Branstetter, free from the claims and interests of the widow and heirs of A. O. Branstetter." He obtained his knowledge of these facts from talking to all the parties to the transaction.

Another witness testified that he was a partner of A. O. Branstetter prior to his death, in the hardware business; that A. O. Branstetter was the owner of the lots. He was asked this question: "Was there some kind of a trade between A. O. Branstetter and S. M. Branstetter just prior to the death of A. O. Branstetter, whereby S. M. Branstetter was to have the hardware store building?" And he answered: "I think so. That was my understanding. I can not state the particulars relating to the deal any more than that A. O. Branstetter told me that he had sold the building to his father. I remember after that time his father always collected the rents." He was asked whether S. M. Branstetter, in conformity with this trade, took possession of the hardware

store building by collecting the rents, and he answered that he did.

This witness stated that he sold out to Dudley & Baker, in December, 1900. Witness Dudley, of the. firm of Dudley & Baker, stated that he was acquainted with the lots in controversy. He stated that his firm paid the rents on the lots in controversy to S. M. Branstetter from January 1, 1901. The rents were paid to S. M. Branstetter, from that time until his death. The proof showed that A. O. Branstetter died June 30, 1901.

The testimony of above witness tends to show that during the life of A. O. Branstetter, his father, S. M. Branstetter, took possession of the lots in controversy, and collected the rents due thereon for a short time before A. O. Branstetter's death.

M. S. Branstetter testified concerning the exchange of real estate between his father and brother, A. O. Branstetter, substantially as follows:

"Brother and father made a trade to exchange real estate. A. O. was to get eighty acres of land and father was to get this store building and the vacant lots on the south side of town. The store building was the one here on the corner where Dudley keeps hardware, the one in controversy in this case. Father made a deed to A. O. for the land, but A. O. hadn't made his deed back to him when he took sick and died."

He stated that he knew these facts from what they (his father and brother) told him.

Another witness, a grand-daughter of S. M. Branstetter, testified that she heard statements made by A. O. Branstetter regarding a trade between them. She heard them talking about the land. "Grandpa was to get some part of the town property.' She didn't know how the trade was to be, nor how much the property was to be. A. O. was to get the farm property. This conversation was some three or four months before A. O. Branstetter's death. She was not sure what the agreement was, but "grandpa was to get town property."

Mrs. Lilly Thomas, the former widow of A. O. Branstetter, testified that S. M. Branstetter executed a deed to A. O. Branstetter for eighty acres of land. She did not know what the consideration for the deed was.

Still another witness testified that A. O. Branstetter had told him of the trade, and that at his request he had drafted a deed by which A. O. was to convey the lots to S. M., but that he died suddenly before the deed could be executed.

(2) From the above testimony, it is clear that A. O. Branstetter had agreed with S. M. Branstetter to exchange the lots in controversy for eighty acres of farm land, and that S. M. Branstetter had complied with the contract on his part by executing the deed and that A. O. Branstetter did not comply with the contract on his part, because of his sudden illness and death.

The testimony was sufficient to take the contract of A. O. Branstetter to convey the lots to his father out of the statute of frauds.

The clear preponderance of the evidence shows that S. M. Branstetter, during the life of A. O., and in pursuance of the agreement between them, executed his deed to the land he was to convey to A. O. and entered into possession of the lots A. O. was to convey in exchange, and collected the rents.

(3) Taking possession in pursuance of a contract of sale, together with the payment in full or in part of the purchase price, is recognized in nearly all of the jurisdictions, as sufficient part performance. 36 Cyc. 654; *Arkadelphia Lumber Co.* v. *Thornton,* 83 Ark. 403.

If a suit had been brought by S. M. Branstetter against A. O. Branstetter for specific performance under the above testimony, specific performance would have been decreed. S. M. Branstetter would have been entitled to such relief.

(4-5) While the allegations of the cross complaint of appellants and the parties before the court would not perhaps have warranted a decree for specific perform-

ance in their favor, it nevertheless appears that the legal title to the property is already in the appellees, as the heirs of S. M. Branstetter, deceased, he having obtained his deed by a sale through the orders of the probate court. While these proceedings of the probate court could have been avoided upon a proper showing, the appellees have failed to show that they have such equities as entitle them to the relief here sought. On the contrary, we are convinced, from the testimony in this record, that the legal title is where it should be. Equity treats that as done which should have been done, and the evidence in the record clearly shows that A. O. Branstetter should have executed a deed to his father, and would have done so but for his death. The appellees are in a court of equity, seeking to have a deed cancelled, which their ancestor, had he lived, under the proof in this record, would have been compelled to execute.

Their complaint is, therefore, without equity, and should have been dismissed.

The decree is therefore reversed, and the cause is remanded, with directions to enter a decree, dismissing appellee's complaint for want of equity.