WHIPPLE *v.* KEITH.

Opinion delivered May 20, 1918.

1.  HOMESTEAD—ABANDONMENT.—The abandonment of a homestead is a question of intent, which intent must be determined from the facts and circumstances of the case. If, when the land owner removed from his home, he did not have a present or constant or abiding intention to return to it and to preserve it as a homestead, then such a removal will constitute an abandonment of the homestead.

2.  HOMESTEAD—ABANDONMENT—FINDING OF CHANCELLOR.—The finding of the chancellor that deceased had not abandoned certain property as his homestead held to be against the clear preponderance of the testimony.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Chancellor; reversed.

*Basil Baker* and *Horace Sloan,* for appellant.

1. If the land was a homestead, it is not subject to partition. 29 Ark. 280; 31 *Id.* 145; 33 *Id.* 399; 47 *Id.* 504; 61 *Id.* 26; 95 *Id.* 256; 122 S. W. 485; 129 *Id.* 284.

2. The clear preponderance of the evidence shows that the homestead was abandoned by Keith in his lifetime, without any intention to return. 60 Ark. 262; 126 *Id.* 541. Abandonment is a question of intention. 37 Ark. 283; 48 *Id.* 539; 101 *Id.* 101; 141 S. W. 505; 60 Ark. 262; 67 Ala. 558; 37 Ill. 230; 126 Ark. 541. Abandonment is clearly shown. 126 Ark. 541; 101 *Id.* 101, and many others, *supra.*

3. There was no reimpressment of the homestead right on the land. 31 Ark. 466; 57 *Id.* 179; 42 *Id.* 175; 78 *Id.* 479; 89 *Id* 506.

*H. M. Mayes,* for appellee.

1. The findings of the chancellor will not be disturbed unless clearly against the weight of evidence. 1 Crawford's New Dig. 309; 122 Ark. 600.

2. Abandonment is almost, if not entirely a question of intent and the burden is upon the party asserting it. 126 Ark. 541; 60 *Id.* 262. The proof is conclusive that there was no abandonment with the intent never to return. 65 Ark. 373; 55 *Id.* 55; 41 *Id.* 309; 37 *Id.* 283; 101 *Id.* 101; 200 S. W. 1025. The decree is correct and sustained by the law and the evidence.

HUMPHREYS, J. Appellant instituted suit against appellees in the chancery court for the Western District of Craighead County, to partition a 120 acre tract of land in section 6, township 14 north, range 2 east, in said county, alleging that he owned an undivided three-sevenths interest and that the minor defendants, Cricket Keith, Jennie Keith, Charlie Keith and Minnie Keith, owned an undivided one-seventh interest each therein. There were other allegations in the complaint unnecessary to set out in this opinion for the reason that the cause was decided on the sole issue of whether or not the tract

of land in question constituted the homestead of the minor defendants' father, W. H. Keith, at the time of his death.

One of the defenses to the partition suit set up by the minor defendants in their answer was that the tract of land in question constituted their father's homestead at the time of his death and was therefore not subject to partition. Other defenses were pleaded, but it is unnecessary to set them out as they were not adjudicated by the trial court.

The cause was submitted to the chancellor upon the pleadings and evidence, from which he found that the lands in question constituted the homestead of W. H. Keith, deceased, at the time of his death, and, for that reason, dismissed the bill for want of equity. From the decree dismissing the bill an appeal has been prosecuted to this court.

The undisputed evidence in the case disclosed that the lands in question were bought and that a homestead right was impressed thereon by W. H. Keith about two years before he moved from Craighead to Randolph County. That being the case, the only question to be determined by this appeal is whether or not W. H. Keith abandoned the lands in question as a homestead when he moved with his family to Randolph County. This court has said that, "The abandonment of a homestead is almost, if not entirely, a question of intent. This intent must be determined from the facts and circumstances attending each case * * * if, at the time of the removal there is no present or constant or abiding intention to return to it and preserve same as a homestead, then such removal from the land will constitute an abandonment of it as a homestead." *Stewart* v. *Pritchard,* 101 Ark. 101.

The facts and circumstances in the instant case responsive to the issue of abandonment, as detailed by the several witnesses, are about as follows: J. H. Whipple testified that before W. H. Keith moved to Randolph County he lived on a rented place about three miles from the property in controversy; that he had lived on the rented place about a year; that he bought a farm in Ran-

dolph County some eight or nine miles from Pocahontas and moved on it with his children and household goods; that he sold practically all he had except his household goods before he left Craighead County; that Mr. Keith told him he was moving to Randolph County with the intention of making that county his future home.

J. E. Inman testified that when Mr. Keith moved away he bought some cattle from him and was informed by him that he had bought the old Minturn place in Randolph County; that he went there with the intention of making that his home; that he left the impression on him that he was going there to stay; that he moved to the hills on account of his health.

V. S. Smith testified that W. H. Keith urged him to collect an indebtedness Bob, his son, owed him, for the reason that they were going to move away; that he was not having good health in Craighead County and that he was going to move on that account; that he had bought a place near a town that had good water, and that in their conversation, he left the impression upon him that he was going to stay.

John Keith, son of W. H. Keith, testified that when his father moved to Randolph County, he went there to live; that he went to stay for good and did not intend to come back to Craighead County; that he came back to visit him a short time before he died and told him he was going to Randolph County and sell his farm and return; that he would move on 80 acres of the tract in question, and that he (John) might move on the other 40 when they got possession of it; that at that time he left his trunk and bed so that he would not have to haul them back; that his father was unable to buy out one of the tenants on the place and gave Mr. Debonair a gray horse and $60 for building a new house on the land in question; that the lumber was sawed and a part of it hauled to the place, and the spot on which the house was to be built was cleared off at the time his father died; that nothing further was done in the way of building the house.

E. S. Cleghorn testified that about three weeks before Mr. Keith died he came by his place and informed him that he had arranged with LaFayette Debonair to build a house on his place in Craighead County and that Mr. Debonair would haul the logs there to be sawed; that thereafter Mr. Debonair did have the logs sawed there and removed a part of the lumber to Keith's place.

J. K. McQuay testified that Mr. Keith purchased the place in Randolph County on account of bad health; that he thought it would help him; that he was unable to keep his boys there and his health did not improve, so he became dissatisfied and sold the property with a view to moving back to his place in Craighead County; that before he had completed his arrangements to go back he died.

Mrs. Rosa McDaniel testified that her father was sickly and on that account moved for a year or two to Randolph County, and, not being able to rent a place to suit him, bought one; that she and the children were not satisfied with his trade and did not want to move away from the bottom and that her father said to them that they would stay a year and if they did not like it they would move back; that if they all liked it they would stay; that before the year expired he sold the place and had made arrangements to move back to the bottom when he died.

Mrs. Frances Eskew, a tenant on W. H. Keith's bottom farm in Craighead County, testified that she held an unexpired lease on a part of the farm and was residing thereon; that a short time before Mr. Keith died he came back and tried to buy her out, but that she declined to sell to him; that he then arranged to have a house built on the property and that he had the lumber hauled there and a spot cleaned up on which to build the house.

We have analyzed the evidence very carefully and have concluded that the decided weight thereof is to the effect that W. H. Keith moved away from Craighead to Randolph County without any present intention, which constantly abided with him, to return to his former homestead in Craighead County. All of his acts, until his

health completely failed and until he became dissatisfied in Randolph County, indicated that he intended to make Randolph County his permanent home. Appellant and John Keith testified positively that Mr. Keith held such intention at the time he moved away from Craighead County. J. E. Inman, who bought a part of Keith's property, and V. S. Smith, to whom Keith's son owed an indebtedness, were so impressed in conversation with Mr. Keith at the time he moved to Randolph County. The testimony of J. K. McQuay, the physician who attended him in his last illness, indicated a change of mind on the part of Mr. Keith because he was unable to keep his boys in Randolph County. The purchase of the property in Randolph County was a very strong circumstance tending to show an intention on the part of Mr. Keith to permanently reside in Randolph County. The fact that he sold his place in Randolph County and made arrangements to return to his bottom farm in Craighead County can be reconciled as well with a change in mind on the part of Mr. Keith as with an intention from the beginning to return to his former homestead. In fact, the only evidence which necessarily points to an intention on his part to return to the bottom farm when he left Craighead County was that of his daughter, Mrs. Rosa McDaniel.

It seems to us that the finding of the chancellor, to the effect that Mr. Keith did not abandon his homestead in Craighead County when he moved to Randolph County, is against the clear preponderance of the evidence.

For the error indicated, the decree dismissing the bill is reversed and remanded for further proceedings not inconsistent with this opinion.