BRATTON *v.* UNION SAWMILL COMPANY.

Opinion delivered April 20, 1925.

1. HOMESTEAD—ABANDONMENT.—Removal from a homestead without an intention to return and preserve it as a homestead amounts to an abandonment.

2. LIMITATION OF ACTIONS—PAYMENT OF TAXES.—Where the statute of limitations began to run before the owner's death by payment of taxes on uninclosed and unimproved land, it continued to run against his minor children after his death.

3. ADVERSE POSSESSION—UNIMPROVED AND UNINCLOSED LAND.— Evidence *held* to justify finding that land originally inclosed and partly improved had returned to the state of unimproved and uninclosed land before the owner's death and at the time the statute began to run against him by virtue of the payment of the taxes thereon.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens,* Chancellor; affirmed.

STATEMENT OF FACTS.

Appellants brought this suit in equity to quiet their title to certain land and to cancel certain deeds to said land to appellee as a cloud on their title.

Appellee defended the suit on the ground that the land was unimproved and uninclosed, and that it acquired title to the same by the payment of the taxes for more than seven years in succession, under § 6943 of Crawford & Moses' Digest.

The record shows that V. A. Bratton was the owner of eighty acres of unimproved land in Union County, Arkansas, and, on the 5th day of December, 1906, S. N. Stow conveyed to him an adjoining eighty acres of land,

which was also uninclosed and unimproved. Bratton executed a mortgage to Stow to secure the purchase money in the sum of $400, and the further sum of $100 which he had borrowed from Stow. On the 19th day of December, 1909, S. N. Stow and wife executed a mortgage on said land, together with other land belonging to him, to John W. Harmon, as trustee, to secure the sum of $2,000 which he owed Mrs. A. L. Alphin. One of the tracts of land belonging to V. A. Bratton was in section eight and the other in section nine.

According to the evidence of Mrs. V. A. Bratton, her husband, V. A. Bratton, died February 9, 1914, leaving surviving him his widow and five children. Two of these children were minors at the time this suit was instituted, on the 14th day of October, 1922. V. A. Bratton cleared eight acres of each eighty-acre tract. A small log house was erected on the eighty acres, in the section nine, which was the tract that V. A. Bratton purchased from S. N. Stow in December, 1906. V. A. Bratton lived on the land in question for two years, and he constituted it his homestead. He then left the land and resided elsewhere with his family until the date of his death. His family has never returned to the land. No one has occupied it since V. A. Bratton left, about the first of the year 1910. The land was sold for taxes on the 13th day of June, 1910, for the nonpayment of taxes for the year 1909, and J. S. Alphin having become the owner of the certificate of purchase, received a tax deed to said land on the 14th day of June, 1912. The Union Sawmill Company became the owner of said land by mesne conveyances from J. S. Alphin. The Union Sawmill Company and its predecessors in title have paid the taxes on said land from the year 1910 to 1922 inclusive. Other facts will be stated in the opinion.

The chancellor found that appellants were barred of recovery by the statute of limitations, and their complaint was dismissed for want of equity, and the title to said land was quieted in appellee.

The case is here on appeal.

*Harry W. Stewart, Hamp P. Smead, W. T. Saye* and *J. N. Hayes,* for appellant.

*Gaughan & Sifford,* for appellee.

HART, J., (after stating the facts). The record shows that the land in question was sold in 1910 for the nonpayment of the taxes of 1909, and that, two years thereafter, a tax deed was executed to J. S. Alphin, who had become the owner of the certificate of purchase issued to the purchaser at the tax sale. The clerk's tax deed was executed to him on the 14th day of June, 1912. V. A. Bratton had moved away from the land with his family, at the beginning of the year 1910, and lived away from there until his death in February, 1914. Thereafter Bratton did not pay the taxes on the land and did not exercise any act of ownership whatever over it. He owed S. N. Stow $500, $400 of which was for the purchase price of one of the eighty-acre tracts of land in question, and he made no effort whatever to pay off this mortgage on the land. After his death, his widow and children continued to remain away from the land, and have not attempted to exercise any acts of ownership over it until about the time this suit was instituted.

The effect of the decree of the chancellor was to hold that Bratton had abandoned his homestead. We think the facts and attendant circumstances show that, when V. A. Bratton left his homestead, he had no intention whatever of returning to it and preserving it as a homestead. Under such circumstances his removal from the land constituted an abandonment of it as a homestead. *Stewart* v. *Pritchard,* 101 Ark. 101; *Whipple* v. *Keith,* 134 Ark. 202; and *Puckett* v. *Glendenning,* 135 Ark. 551.

It is conceded that the clerk's tax deed to said land to J. S. Alphin constituted color of title under our decisions. *Wheeler* v. *Foote,* 80 Ark. 435; *Moore v. Moore,* 118 Ark. 516; and *Lightle* v. *Laws,* 123 Ark. 537.

The record shows that a clerk's tax deed was executed to J. S. Alphin in June, 1912, and that V. A. Bratton did not die until February, 1914. The proof also shows that appellee and its predecessors in title com-

menced to pay taxes on the land in 1910, and continued to pay them each successive year thereafter until, and including, the year 1922. It is true that neither appellee nor its predecessors in title ever had actual possession of the land, but they paid the taxes for more than seven years in succession, under § 6943 of Crawford & Moses' Digest, which provides that unimproved and uninclosed land shall be deemed to be in the possession of the person who has paid the taxes thereon, if he has color of title thereto. This court has held that, when the statute of limitations in such cases begins to run before the death of the owner, it continues to run against his minor children after his death. *Bender* v. *Bean,* 52 Ark. 132, and *Freer* v. *Less,* 159 Ark. 509.

Counsel for appellants concede the correctness of the principle of law above announced, and seek to reverse the decree mainly on the ground that the land in controversy is not uninclosed and unimproved land within the meaning of § 6943. In making this contention they rely upon the case of *Fenton* v. *Collum,* 104 Ark. 624, where the court held that the statute providing that one who, having color of title, pays taxes for seven years upon unimproved and uninclosed land, acquires the title thereto by limitation, does not apply to land cleared, fenced, or in cultivation. In discussing the question in that case the court said:

"It may be that, when fields, once cleared and cultivated, have been abandoned and permitted to go to waste and grow up in briars and brush and the fences become delapidated and destroyed, the lands will be regarded as unimproved and uninclosed, as though they had never been, but we think this condition must be shown before the title to lands, once improved and inclosed, can be acquired by the payment of taxes in accordance with said law. In other words, if the lands are shown to have been improved or inclosed during any of the seven years, the successive payment of taxes for which would have conferred title upon the person paying the taxes if they had been unimproved and uninclosed, it would defeat the claimant's title thereto.

This brings us to a consideration of whether the land was unimproved and uninclosed land within the meaning of § 6943 of Crawford & Moses' Digest at the time V. A. Bratton died, so that the statute of limitations had commenced to run against him.

It appears from the record that V. A. Bratton cleared eight acres of land on each eighty-acre tract, and inclosed the same under one fence. He built a little log house on the cleared land in section nine, and occupied it with his family as a homestead. He made one or two crops on the cleared land, and then left the land, and never afterwards returned to it. At the time he left there was a mortgage of $500 on the land, and Bratton never attempted to pay any part of the mortgage debt. He never paid the taxes nor exercised any acts of ownership over the land. S. N. Stow, who held a mortgage on the land, never exercised any acts of ownership over it after Bratton left the land. Bratton left the land during the latter part of 1909, or the first part of 1910. He died in February, 1914. Thus it will be seen that, for four years, no attention whatever was paid to the land, and no one attempted to exercise any ownership over it.

When we consider the smallness of the clearing compared with the whole 160 acres, and the fact that there was only a little log house built on it, we think the chancellor was justified in finding that it had returned to a state of nature before V. A. Bratton died, and that the land was unimproved and uninclosed within the meaning of the statute. The surrounding circumstances indicate that the land would soon grow up with briars and bushes after it was abandoned, and the chancellor was justified in finding that one payment of taxes at least was made before the death of Bratton, after the land had returned to a state of nature, and became unimproved and uninclosed land within the meaning of the statute. The undisputed evidence shows that more than seven successive payments of taxes were made, and the chancellor was justified in finding that appellants were barred by the statute of limitations.

Therefore the decree will be affirmed.