FREER v. LESS.

Opinion delivered June 18, 1923.

1. APPEAL AND ERROR—DEFENSE NOT RAISED BELOW.—The plea of the statute of frauds must be raised in the trial court, and cannot be first raised on appeal.

2. FRAUDS, STATUTE OF—DEFENSE OF, RAISED ON DEMURRER WHEN.— The question of compliance with the statute of frauds may be raised by demurrer only when it appears from the face of the pleading that the contract is oral, when it should have been written.

3. HOMESTEAD—OCCUPANCY.—The character of a homestead is not imposed upon a farm by a purchaser where he placed his son-in-law in possession and assisted him in making a crop, and spent a portion of each week on the farm, but spent the week-ends at his home in town with his wife and family.

4. FRAUDS, STATUTE OF—ORAL SURRENDER OF POSSESSION.—Where a purchaser of a farm, finding that he could not pay for it, surrendered its possession to his vendor by directing his son-in-law in possession to attorn to the vendor, which the son-in-law did, and the purchaser died without executing a reconveyance, the surrender was effective.

5. LIMITATION OF ACTIONS—POINT OF BEGINNING.—Where a purchaser of land, finding himself unable to pay for the land, directed his tenant to attorn to the vendor, which was done, and the purchaser died before executing a reconveyance, the attornment by the tenant formed a point from which the statute of limitations would run against the heirs of the purchaser.

6. LIMITATION OF ACTIONS—SUBSEQUENT DISABILITY.—Where a purchaser of a farm, being unable to pay for the farm, surrendered the farm to the vendor, and subsequently died, neither the subsequent insanity of the purchaser's widow nor the infancy of his heirs would stop the running of the statute of limitations.

Appeal from Lawrence Chancery Court, Eastern District; *Lyman F. Reeder,* Chancellor; affirmed.

*Smith & Gibson* and *W. E. Beloate,* for appellant.

The lands were impressed as a homestead by T. J. McGinnis. 69 Ark. 596. There is no testimony to show that Less went into possession of the lands during the life of said McGinnis. If there was a resale of the lands, or a rescission of the contract of sale, it would come within the statute of frauds, and there was no writing evidencing it nor any facts shown that would take the transaction out of the operation of the statute. 91 Ark. 140; Smith, Fraud, 363. An oral agreement to rescind a contract for the sale of lands, entered into after some payments have been made, and others are due, will be held to be within the statute of frauds, and invalid unless followed by an actual abandonment of the sale by both parties and a restoration of the property to the vendor. 45 Mo. 404; 129 Ill. 431; 104 N. C. 389; 112 Wis.

196. The evidence shows McGinnis "was supposed to
have executed a deed for this, and he died before it was
executed," and the burden of proof was on appellees to
show such a partial performance of the contract in Mc-
Ginnis' lifetime as would take it out of the statute and
make it effective. 41 Ark. 97; 142 Ark. 179; 21 Ark. 227;
44 Ark. 79; 44 Ark. 334; 136 Ark. 447; 106 Ark. 336.
The evidence does not show that McGinnis put Less into
possession of the lands after his purchase thereof, nor
that his tenants attorned to him after the alleged re-
scission of the contract. McGinnis' tenants were in
possession at his death, and their possession was his.
Less had a lien for rents, and payment of rent by tenant
of McGinnis in possession would not relieve the alleged
oral sale of the lands from the operation of the statute
of frauds.

*Poindexter & Irby* and *Ponder & Gibson,* for appel-
lees.

The appeal should be dismissed for noncompliance
with Rule 9. The lands in controversy did not constitute
the homestead of McGinnis, nor did his widow or any of
appellants have any homestead right therein. It was
never impressed with a homestead character by Mc-
Ginnis' living with his family on it, intending to make
it his home. Testimony does not bring it within rule in
69 Ark. 596. See 57 Ark. 179; 131 Ark. 221. If any
homestead right existed. Mrs. McGinnis abandoned it.
134 Ark. 183; 104 Ark. 313. Less was placed in posses-
sion by McGinnis under a contract of rescission, and his
possession was adverse under claim of ownership. The
statute of frauds was not pleaded and cannot be availed
of here. 147 Ark. 211; 144 Ark. 123. The demurrer
would not raise the question, the necessary facts not
appearing on the face of pleading demurred to. 128
Ark. 433; 105 Ark. 638; 71 Ark. 302; 96 Ark. 184; 96
Ark. 505; 92 Ark. 392. Oral contract of sale of lands
raises a moral obligation, and the vendor need not plead
the statute of frauds in an action for specific perform-

ance. 121 Ark. 91; 11 Neb. 222; 105 Ind. 17; 109 Fed. 48; 15 Ohio 569; 18 Pick. 369. A parol agreement is neither illegal nor void, and a plea of the statute of frauds as a defense is one which may be waived. The pleadings do not show whether there was a written contract or not, and no motion was made to require it done, and the presumption is that the contract was in writing. 64 Ark. 462; 38 Ark. 594; 17 Ark. 279; 23 Ark. 200. There was sufficient performance of the contract anyway to take transaction out of statute of frauds. 52 Ark. 207; 69 Ark. 603; 128 Ark. 390; 115 Ark. 154; 30 Ark. 249; 42 Ark. 246; Browne, Statute of Frauds, § 467; 79 Ark. 100; 139 Ark. 469. Appellants are barred by limitations and laches, and estopped to claim an interest in the lands in controversy. The testimony shows that McGinnis, through whom appellants claim, died after putting Less into possession under rescission contract. The tenants attorned to him. 10 Ark. 9; 132 Ark. 11. Tenant cannot dispute title of a purchaser of the landlord, any more than he could dispute landlord's title. 102 Ark. 380; 139 Ark. 43. The statute of limitations began to run in McGinnis' lifetime, and his death in no wise affected it. 18 C. J. Deeds, 407-9; 160 S. W., 29 S. W. 166, also 917; 50 Pac. 7, 73 Am. St. Rep. 532, 53 Am. St. R. 532; 55 Am. Dec. 234; 120 N. W. 724; 48 S. W. 483; 71 Ark. 292; 88 Ark. 395; 60 Ark. 50; 55 Ark. 85; 114 Ark. 759; 15 Ark. 286; 61 Ark. 527; 61 Ark. 575; 22 Ark. 263; 83 Ark. 495; 101 Ark. 230; 112 Ark. 467; 121 Ark. 423; 126 Ark. 26; 104 Ark. 83; 80 Ark. 8; 69 Ark. 603; 128 Ark. 390; 69 Ark. 153; 125 Mo. 118.

*Smith & Gibson* and *W. E. Beloate,* in reply.

Lands were homestead of McGinnis. 10 Am. & Eng. Enc. 8; *Krone* v. *Cooper,* 43 Ark. 547. Testimony does not show any delivery of possession of lands to Less after alleged verbal contract of rescission or resale was made. 41 Ark. 393. Neither does it show that Less was in such possession or in possession at all before Mc-

Ginnis' death. The burden was on appellees to show these facts, and they have failed utterly to discharge it.

SMITH, J. The widow and heirs of T. J. McGinnis brought this suit to recover the possession of a tract of land from the heirs of Isaac Less. A demurrer to the complaint was sustained, and the plaintiffs appealed, and we reversed the judgment of the court below, and remanded the cause, with directions to overrule the demurrer. *McGinnis* v. *Less,* 147 Ark. 211.

We held that the action should be treated as one against the mortgagees of land in possession for an accounting, and that when so treated a cause of action was stated. The complaint alleged that McGinnis departed this life intestate in the year 1898, and that the plaintiffs were his widow and his heirs at law; that on April 16, 1898, Isaac Less sold and conveyed to T. J. McGinnis a quarter section of land for $2,500, evidenced by ten notes each for $250, payable one each year on the anniversary of the notes. The deed reserved a lien on the land and upon the crops grown thereon, and that clause of the deed was copied in full in the former opinion. The complaint further alleged that McGinnis moved on to and occupied the land as his homestead, and that, upon the death of McGinnis, Less took possession of the land and has held it since, and has collected the rents thereon. The prayer of the complaint was for an accounting.

We held that the writing set out in the complaint as a basis of appellant's title was a deed of conveyance, and not an executory contract to convey, and that, under the allegations of the complaint, the title passed to McGinnis upon the delivery of the deed, and upon his death descended to his heirs at law, subject to the widow's homestead and dower rights, and that, when the grantor took possession for the purpose of collecting rents in accordance with the stipulation in the deed, he was in the attitude of a mortgagee in possession.

Upon the remand of the cause the court sustained a motion to make the complaint more specific, and that was done, and the defendants filed an answer in which they alleged that the contract of sale had been rescinded, and that McGinnis, realizing that he could never pay for the land, had agreed to turn it back to Less, and, pursuant to this agreement, had placed Less in possession. The answer did not allege whether this agreement was in writing or not, and it is now insisted that the court erred in refusing to sustain a demurrer to that paragraph of the answer. Upon the remand of the cause the case was fully developed, and there was a finding and decree in favor of the defendant, from which is this appeal.

The plea of the statute of frauds was raised for the first time on appeal, and is therefore too late to be considered, as one is not required to plead it, and may waive that defense. *Skinner* v. *Fisher*, 120 Ark. 91.

It is insisted that the demurrer filed in the cause raised that question. But we do not think so. It is true the question may be raised by demurrer, but only when it appears, from the face of the pleading demurred to, that the contract is oral when it should have been in writing. *Izard* v. *Connecticut Fire Ins. Co.*, 128 Ark. 433.

As we have said, the answer in this case did not recite whether the contract of rescission was oral or in writing, and there was no motion to make the complaint specific in that respect. We think, however, that defense, if pleaded, was not available, for reasons hereinafter stated.

The testimony shows that on October 15, 1895, Less and his wife conveyed the land in litigation to McGinnis and one A. C. Estes for a consideration of $2,500, to be paid in ten years, but this consideration was never paid, and in some manner not explained Less reacquired title, and in 1898 executed the conveyance to McGinnis set out above.

An attempt was made to show that McGinnis impressed the land as his homestead, but we think this attempt failed. McGinnis placed his son-in-law, Pickens, in possession, and assisted him in making a crop in 1898, and spent a portion of each week on the farm, but his wife never left her home in town, where she and her husband were living when they bought the land, and McGinnis spent the week-ends at his home with his wife and his family, and he died in December, 1898, without ever having abandoned his home in town by moving on the farm.

Pickens testified that McGinnis directed him to attorn to Less, and that he did so, and it is insisted that this was done pursuant to the provision of the contract giving Less a lien on the crop of each year to secure the payment of purchase money due that year. But McGinnis was not in default when he died, as no payment of principal fell due until after his death.

We think the testimony establishes the fact that McGinnis directed Pickens to attorn to Less for the reason that McGinnis had in fact surrendered the possession to Less, and the deed which should have been made to Less was not made because McGinnis died suddenly. Several disinterested witnesses testified that they heard McGinnis say that he found he could not pay for the land and that he had turned it back to Less for that reason, and, in our opinion, the testimony establishes this to be a fact. This agreement to surrender the land and to reconvey it became effective, notwithstanding it should have been evidenced by a deed of conveyance when the possession was taken under that agreement. Certainly it formed a point from which the statute of limitations would begin to run. *Garretson* v. *White,* 69 Ark. 603; *Briggs* v. *Moore,* 128 Ark. 390; *Branstetter* v. *Branstetter,* 115 Ark. 154; *Pindall* v. *Trevor,* 30 Ark. 249; *Pledger* v. *Garrison,* 42 Ark. 246.

There is testimony showing that certain of the plaintiffs have been laboring under the disability of infancy, and an attempt was made to show that Mrs. McGinnis

was insane, but, in our opinion, this attempt failed. At any rate, there is but little testimony that she became insane prior to the death of her husband, and, if she was ever insane, she became so many years after his death.

Neither the subsequent insanity of the widow nor the infancy of the heirs would avail to prevent the running of the statute of limitations, because, in the lifetime of the husband and ancestor, Less reentered and took possession of the land under an agreement entitling him to do so. His holding was actual and adverse in the lifetime of McGinnis, and, as the statute of limitations was put in motion in McGinnis' lifetime, its running was not arrested by his death, and the widow is now dead, and as this adverse possession is shown to have continued from the fall of 1898 to the institution of this suit in 1919, it necessarily follows that the plaintiffs were barred by the statute of limitations, and the court below properly so found, and dismissed the complaint. *Bender* v. *Bean*, 52 Ark. 132; *Gibson* v. *Herriott*, 55 Ark. 85.

It is also insisted that the cause of action is barred by laches; but, as we have found that it was barred by limitations, we need not consider whether it is not also barried by laches.

The testimony is by no means undisputed; on the contrary, there are a number of sharp conflicts in it, but we think two facts are clearly established; first, that the land, and that he had turned it back to Less for that second, that McGinnis surrendered the possession to Less, who occupied the land until his death, and whose heirs have since occupied it continuously and adversely. These facts being established, it follows that the suit is barred by limitations, and the decree of the court below so holding is affirmed.