McKENZIE *v.* RUMPH.

Opinion delivered September 27, 1926.

1. HOMESTEAD—ABANDONMENT.—While a husband cannot convey the homestead unless his wife joins in executing the conveyance, as required by § 5542, C. & M. Dig., it is within his power, when he has not deserted his wife and abandoned his family, to abandon his homestead, without obtaining his wife's consent.

2. HOMESTEAD—ABANDONMENT.—Where the owner of a homestead verbally agreed to convey it to another, and delivered possession of a portion of the house to his grantee, but became ill and died before executing a deed, he will be *held* to have abandoned his possession as homesteader.

3. FRAUDS, STATUTE OF—ORAL SALE OF LAND—PART PERFORMANCE.— A parol agreement to convey land is valid against the statute of frauds, where the grantor surrendered possession, but died before making a deed.

4. EQUITY—LACHES.—Where a son, having the legal title to land, orally agreed to convey the land to his mother, but died before executing a conveyance, and his heirs conveyed the land to defendants, heirs of the mother relying upon such verbal sale, who waited 15 years after their rights as heirs had accrued, and nearly seven years after defendants' deed was on record, will be *held* guilty of such laches as barred them from asserting title.

5.   Vendor and purchaser—imputed knowledge.—The knowledge
of one of two jointly interested purchasers as to the condition
of the title to land is imputed to the other.

Appeal from Ouachita Chancery Court, Second
Division; *George M. LeCroy,* Judge; affirmed.

*Saxon, Davidson & Wade,* for appellant.

*Gaughan & Sifford* and *Harry Meek,* for appellee.

Smith, J.   On the 13th day of June, 1889, Mrs.
Ely M. Neeley obtained patent from the United States
to two eighty-acre tracts of land in Ouachita County,
and thereafter occupied the land as her home until
March 1, 1891, at which time she conveyed it to her
son, James T. Neeley, for the consideration of $450, of
which $25 was paid in cash, and a lien was retained to
secure the balance of the unpaid purchase money.   This
deed was duly recorded.

Mrs. Neeley was the mother of four children, to-wit:
James T. Neeley, Mary Neeley Haines, Mattie Neeley
McKenzie, and Nannie Neeley Powell.

On January 27, 1917, the widow and heirs of J. T.
Neeley, who had died February 23, 1898, conveyed the
land, by warranty deed, to G. S. Rumph and George
Williams, and later Mrs. Nannie Neeley Powell executed
to Rumph and Williams a quitclaim deed for her interest
in the land.   Thereafter Tom Jinks was constituted
attorney-in-fact for the heirs of Mary Neeley Haines
and Mattie Neeley McKenzie, both of whom had died, and
on June 6, 1923, Jinks, as attorney-in-fact, brought this
suit to recover an undivided half interest in the land
and to require an accounting of the rents and profits.
The heirs of Mary Neeley Haines and Mattie Neeley
McKenzie were made parties plaintiff.

It was alleged in their complaint, and testimony was
offered tending to show, that J. T. Neeley was unable to
pay the balance of the purchase money, and proposed to
reconvey the land to his mother, Mrs. E. M. Neeley, and
it was agreed that J. T. Neeley should move off the land
and that Ben Powell, who was the husband of Nannie
Neeley Powell, should move in the house which was

occupied by Mrs. E. M. Neeley and the family of J. T. Neeley. This was the only house on the land. This agreement was consummated, but the deed from J. T. Neeley to his mother was never executed, for the reason that J. T. Neeley became ill about a week after the contract to reconvey was made, and, after an illness of two weeks, died without ever having executed the deed as agreed. Pursuant to this agreement, however, J. T. Neeley actually vacated two of the rooms in the house, and these were occupied by Ben Powell and his family. Immediately after the death of J. T. Neeley, his wife and family left the place, pursuant to the agreement J. T. Neeley had made with his mother.

After the death of J. T. Neeley in 1898, Mrs. E. M. Neeley remained in possession of the land until her death, which occurred March 11, 1908, sharing the only residence on the land with her son-in-law, Powell, who was her tenant. The taxes on the land were paid by Mrs. E. M. Neeley in her own name until the time of her death.

After the death of Mrs. E. M. Neeley, her son-in-law, Powell, remained in possession until his death, which occurred January 27, 1909, and thereafter his widow, Mrs. Annie Neeley Powell, remained in possession of the land until it was conveyed, as hereinbefore stated, to Rumph and Williams. Only a small portion of the land was in cultivation when Mrs. E. M. Neeley died, and Mrs. Powell continued in the exclusive and sole possession of the land until she and the J. T. Neeley heirs conveyed to Rumph and Williams, and paid the taxes thereon in her individual name. The other heirs of Mrs. E. M. Neeley received nothing from the land during Mrs. Powell's occupancy, and paid nothing on the taxes, their testimony being that the use of the land equaled in value the amount of the taxes.

The testimony was devoted chiefly to establishing the fact that there was an oral sale of the land by J. T. Neeley to his mother, under which the possession was surrendered to and retained by Mrs. Neeley until the time of her death. In opposition to this contention it is

insisted that there could have been no valid oral sale of the land for the reason that it was the homestead of J. T. Neeley, and it was therefore essential to a valid conveyance of it that his wife should have joined in the execution of the deed conveying it, and, inasmuch as it is conceded that Mrs. J. T. Neeley did not join in the execution of a deed, there was no valid conveyance.

By § 5542, C. & M. Digest, it is provided that no conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity, except for taxes, certain liens, and unpaid purchase money, unless the wife joins in the execution of such instrument, and acknowledges the same.

We will not review the testimony tending to show that there was an oral sale of the land to Mrs. Neeley by J. T. Neeley in satisfaction of the debt for the unpaid purchase money. We think the testimony establishes the fact that there was such a sale, and that it was valid, notwithstanding the statute referred to.

While a husband cannot convey the homestead unless the wife joins in the execution of the conveyance, it is in his power, when he has not deserted his wife and abandoned his family (*Montgomery* v. *Dane,* 81 Ark. 154, 98 S. W. 715), to abandon his homestead. This results from the fact that, as head of the family, he has the right to determine where his home shall be. That the husband has the right to abandon his homestead without obtaining the consent of his wife is settled by the decisions of this court in the cases of *Newman* v. *Jacobson,* 108 Ark. 297, 158 S. W. 134; *Pipkin* v. *Williams,* 57 Ark. 242, 21 S. W. 433; *Brown* v. *Brown,* 104 Ark. 313, 149 S. W. 330; *Stewart* v. *Pritchard,* 101 Ark. 101, 101 S. W. 505; *Farmers' Bldg. & Loan Assn.* v. *Jones,* 68 Ark. 76, 56 S. W. 1062; *Vestal* v. *Vestal,* 137 Ark. 309, 209 S. W. 273; *Brignardello* v. *Cooper,* 116 Ark. 103, 172 S. W. 1030; *Mason* v. *Dierks Lbr. & Coal Co.,* 94 Ark. 107, 125 S. W. 656; *Newton* v. *Russian,* 74 Ark. 88, 85 S. W. 407.

When the homestead has been abandoned, it becomes subject to execution and the right to convey, as if it had

never been the homestead. *Pipkin* v. *Williams, supra; Stewart* v. *Pritchard, supra.*

We think the homestead had been abandoned as such by J. T. Neeley before his death, although he was residing there at the time of his death. The testimony shows that most of his household effects had been packed up, preparatory to moving, when he became ill, and that he actually vacated two rooms of the small house in which he resided, and that Powell had moved into these rooms and had taken possession of the place in the lifetime of J. T. Neeley. In other words, Neeley had surrendered possession, and Powell had occupied and taken possession.

The converse of the proposition here stated was declared in the case of *Gill* v. *Gill,* 69 Ark. 596, 65 S. W. 112. The syllabus in that case reads as follows: "Where the owner of a house, being a resident of this State and a married man, moved part of his furniture into it, with intention to occupy it as a homestead, but was taken sick and died before the moving was completed, and before any of his family had actually resided therein, and after his death his wife completed the moving and took up her residence there, the house was 'occupied as a residence', within art. 9, § 5, of the Constitution, so as to entitle his wife and minor children to claim the same as a homestead."

In the case of *Stewart* v. *Pritchard, supra,* Mr. Justice FRAUENTHAL said that "the abandonment of a homestead is almost, if not entirely, a question of intent."

There was a clear intent here on the part of J. T. Neeley to abandon his homestead, and this intent was so far executed that his brother-in-law, with his consent, had taken possession of the home.

The land having ceased to be the homestead of J. T. Neeley, was therefore subject to conveyance as if it had never been a homestead, and the widow of J. T. Neeley testified that she assented to its reconveyance to Mrs. E. M. Neeley and was a party to that agreement.

The statute of frauds is pleaded to defeat this reconveyance. But we think the statute was met by the actual surrender of possession under the parol agreement to reconvey. That agreement was fully consummated by the surrender of possession, and the conveyance was therefore valid. *Phillips* v. *Jones,* 79 Ark. 100, 95 S. W. 164; *Bostleman* v. *Henkel,* 152 Ark. 628, 239 Ark. 30; *Freer* v. *Less,* 159 Ark. 509, 252 S. W. 354.

Another disputed question of fact is whether Rumph and Williams were innocent purchasers of the land. But assuming, without deciding, that they were not, we think plaintiffs cannot recover, notwithstanding we have also concluded that the reconveyance of the land to Mrs. E. M. Neeley was valid, for the reason that we think they have been guilty of laches which bars this right.

It will be remembered that the plaintiffs are seeking to enforce an equitable title, for Rumph and Williams have the legal title to the land through a chain of conveyances which includes only a patent from the United States to Mrs. Neeley and her deed to J. T. Neeley and the deed from the widow and heirs of J. T. Neeley to Rumph and Williams.

Plaintiffs rely on a verbal resale of the land made in 1898, and the suit brought to establish and assert that title was not filed until the 6th day of June, 1923. It is true that Mrs. Neeley did not die until 1908, but this last date was fifteen years before the institution of this suit. It is true that Mrs. Powell, who remained in possession, was a daughter of Mrs. E. M. Neeley, and had the right to remain in possession as an heir-at-law; and it is also true that there was a presumption that her possession was not adverse to her cotenants, the other heirs-at-law of Mrs. E. M. Neeley, but the inaction of these plaintiffs under the facts of this case is a proper circumstance to consider in determining whether they were guilty of laches in asserting their title after the land had been conveyed to Rumph and Williams by the heirs of J. T. Neeley and by Mrs. Powell.

Such knowledge as Rumph had of the interest of the plaintiffs in this land is imputed to him through the knowledge of Williams, who was jointly interested with him in the purchase of the land, and who became, after its purchase, his cotenant. *Krow & Neumann* v. *Bernard,* 152 Ark. 99, 238 S. W. 19; *Neff* v. *Elder,* 84 Ark. 277, 105 S. W. 260; *Steele* v. *Robertson,* 75 Ark. 228, 87 S. W. 117.

Williams testified that he applied to Rumph to assist him in the purchase of the land. He knew the different heirs of Mrs. Neeley, and supposed they were the owners of the land, and he negotiated with them for its purchase, and had agreed on the price to be paid, but, when an abstract of the title was made, it appeared that the title was in the heirs of J. T. Neeley, and the deed was taken only from those heirs. This deed purported to convey the entire title, and Williams testified that he paid the J. T. Neeley heirs the full purchase price for the land. Later he and Rumph took a quitclaim deed from Mrs. Powell, because she was in possession, and paid her $5 for the deed.

The Haines and the McKenzie heirs knew that Rumph and Williams had declined and failed to consummate the agreement to purchase the land from them, and yet they took no action in the matter until plaintiff Jinks became their attorney-in-fact and instituted this suit. It is true this suit was brought within seven years of the date of the deed to Rumph and Williams, but only a short time less than the seven years, and during all this time there was on record a deed which apparently vested the title in J. T. Neeley. Rumph testified that, when it came to closing up the trade, he was advised by his attorney that it was only necessary to secure a deed from the heirs of J. T. Neeley, and that he paid these heirs the full value of the land on the assumption that he would acquire what the deed purported to convey, the entire title. Acting upon this assumption, he, two years later, bought from Williams the half interest which Williams owned, he kept the taxes down, and, shortly before the institution of this suit, sold an oil lease on the land.

Under these circumstances we think the plaintiffs are barred by laches. If they had taken any interest in the land, or had made any inquiry about it, they would have learned that, in 1891, their ancestor had deeded the land to their uncle, and, although they may have relied upon an oral reconveyance of the land and the possession of their ancestor, and, after her death, the possession of Mrs. Powell as being that of a tenant in common, the fact remains that for thirty-two years the legal title was in J. T. Neeley and his heirs, and was allowed to so remain without question until the institution of this suit, and that nearly seven years of this time was allowed to so expire after they knew that Rumph and Williams had not purchased from them. Their negligent delay resulted in Rumph paying Williams full value for an undivided half interest in the land and later executing an oil ease. The complaint does not even allege that the Haines and McKenzie heirs, who are all *sui juris,* were ignorant of the purchase of Rumph and Williams.

The inaction of these heirs was such as to lead Rumph to believe, and he testified that he did believe, that he and Williams acquired the whole title under the deed from the J. T. Neeley heirs, and, thus believing, to pay full value for the half interest which he supposed Williams owned, and, still later, to execute an oil lease, which evidently was the circumstance which enlisted the interest of Jinks, an entire stranger to the title, and who brought this suit for them and for himself.

In the very recent case of *Avera v. Banks,* 168 Ark. 718, 271 S. W. 970, we said: "If a party, knowing his rights, unreasonably delays in asserting them and suffers his adversary to enter into obligations, or in any way by inaction lulls suspicion of his demand, to the harm of the other, then equity will ordinarily refuse to aid him in the establishment of his claim. It would be contrary to equity and good conscience to enforce such rights when a defendant has been led to believe, by the silence or conduct of the plaintiff, that there would be no assertion of title in opposition to his claim."

The doctrine of that case is applicable here, and we hold that appellants·are barred by laches, and the decree of the court below dismissing their complaint as being without equity is affirmed.