NICHOLAS *v.* WARD.

4-6984                                    168 S. W. 2d 1095

Opinion delivered February 22, 1943.

*Oscar E. Ellis,* for appellant.

*H. A. Northcutt,* for appellee.

HOLT, J.   November 15, 1929, D. A. Ward and Belle Ward, his wife, executed their note to L. D. Cannon in the amount of $600, and a mortgage, as security, on 160 acres of land in Fulton county, Arkansas, which constituted their homestead.  Subsequent to the execution of the note and mortgage, L. D. Cannon died, and Oscar Cannon, his son, as owner, on December 1, 1941, instituted foreclosure proceedings, making D. A. Ward and Belle Ward defendants.   In due course there was a decree in favor of Oscar Cannon, and the commissioner, appointed by the court, was ordered to sell the land January 10, 1942.

Prior to the date appointed for the sale, appellant, D. L. Nicholas, who is the father of Belle Ward, intervened in the foreclosure suit, alleging that in April, 1938, the Wards entered into an oral contract with him whereby they sold to him, for a consideration of $250, ten acres from the 160-acre tract.   He deposited with

the clerk of the court the alleged purchase price of $250. His prayer was that the Wards be required to deed to him this ten-acre tract, free of the mortgage lien of Oscar Cannon, and that they be required to accept the $250 as the full amount of the purchase price.

Upon a trial the court denied appellant, Nicholas, the relief for which he prayed and dismissed his intervention for want of equity. This appeal followed.

During the pendency of this litigation, appellee, H. A. Northcutt, acquired the interest of Oscar Cannon.

The undisputed evidence supports the court's finding and decree that appellee, H. A. Northcutt, the present owner of the note sued on and mortgage securing it, is entitled to the sale of the entire 160-acre tract of land in satisfaction of his mortgage lien, should it be necessary to secure to him the full amount due from the Wards on their note.

Appellant argues, however, that the court should direct the commissioner appointed to make the sale, to sell, first, 150 acres of the tract in question, and should there be realized from such sale an amount which, when added to the $250 appellant has paid into the registry of the court, would be sufficient to satisfy the debt of appellee, Northcutt, then appellees, D. A. Ward and Belle Ward, should be required to execute proper deed to him in compliance with their oral contract.

The Wards contend, however, that any oral agreement between them and appellant, Nicholas, would not be binding or valid for the reason that it falls within the statute of frauds and also that since this land constituted their homestead no contract or instrument affecting the homestead of any married man should be valid unless his wife joins in the execution of such instrument and acknowledges same.

After a careful review of the evidence in this case we have reached the conclusion that appellant's contention must be sustained.

The evidence in this case is to this effect. Appellant testified that in April, 1938, he, by oral contract with

Dave and Belle Ward, purchased from them 10 acres of the 160 acres of land covered by the mortgage and which appellant definitely describes by metes and bounds in his intervention. He was immediately placed in possession by the Wards, had the land surveyed, fenced and erected a four-room house, a chicken house and barn on the property at a cost of $300 for materials and $100 for labor. Dave and Belle Ward lived about 300 yards from the appellant. Dave Ward and appellant's daughter, Belle, visited him many times after he moved on this 10-acre tract. Appellant was to pay no interest. The Wards were permitted to pasture the land and to use the barn without charge. When the Wards pressed him for a payment on the purchase price of $250 appellant made arrangements with Oscar Cannon, the then holder of the mortgage, whereby Cannon agreed to accept $50 in cash with a mortgage on the 10-acre tract to secure the balance, and further agreed to credit the mortgage which he, Cannon, held against the Wards with this $250 and release the 10-acre tract from the mortgage lien, but that the Wards did not agree to this arrangement. The land, exclusive of the 10 acres, was worth approximately $1,000.

Daisy Hammond, who was not related to any of the parties, testified: "Do you know about Dave Nicholas having bought some land from them? Yes, sir. Did you ever talk to Belle Ward about it? I heard them talking about it. What did they say? I heard them mention that they sold him the land. You heard Belle Ward talking about it? Yes, sir. Dave Nicholas has been in possession of the land since he built the house? Yes, sir, ever since he built there." Dave Ward testified that he contracted orally in the spring of 1938 to sell D. L. Nicholas the 10-acre tract in question; that Nicholas went into possession and built buildings on it and had lived there since. Belle Ward testified that the 10-acre tract claimed by appellant is a part of the homestead upon which she and her husband lived and that she never agreed to sell it to appellant, who is her father. She admitted that she knew that appellant placed some buildings on the land. She objected to her husband selling

the land to appellant for the reason that she did not think he would ever pay for it.

The rule appears to be well settled that under an oral contract to convey land the statute of frauds (Pope's Digest, § 659) is met by surrendering possession to the purchaser. In *Evins* v. *Sandefur-Julian Company,* 81 Ark. 70, 98 S. W. 677, this court held, quoting headnote one: "One who takes possession of land under a verbal contract to exchange other land for it and makes improvements under such contract is entitled to specific performance of the contract of exchange." And in *McKenzie* v. *Rumph,* 171 Ark. 791, 286 S. W. 1022, this court said: "The statute of frauds is pleaded to defeat this reconveyance. But we think the statute was met by the actual surrender of possession under the parol agreement to reconvey. That agreement was fully consummated by the surrender of possession, and the conveyance was therefore valid. *Phillips* v. *Jones,* 79 Ark. 100, 95 S. W. 164, 9 Ann. Cas. 131; *Bostleman* v. *Henkle,* 152 Ark. 628, 239 S. W. 30; *Freer* v. *Less,* 159 Ark. 509, 252 S. W. 354."

The rule also appears to be well settled that the husband, being the head of the family and having the right to determine where his home shall be, may abandon his homestead, or any part thereof, without the consent of his wife. In the *McKenzie* v. *Rumph* case, *supra,* this court said: "It is insisted that there could have been no valid oral sale of the land for the reason that it was the homestead of J. T. Neeley, and it was therefore essential to a valid conveyance of it that his wife should have joined in the execution of the deed conveying it, and, inasmuch as it is conceded that Mrs. J. T. Neeley did not join in the execution of a deed, there was no valid conveyance. By § 5542, C. & M. Digest, (now § 7181, Pope's Digest) it is provided that no conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity, except for taxes, certain liens, and unpaid purchase money, unless the wife join in the execution of such instrument, and acknowledges the same. . . . While a husband cannot convey the homestead unless the wife joins in the

execution of the conveyance, it is in his power, when he has not deserted his wife and abandoned his family (*Montgomery* v. *Dane,* 81 Ark. 154, 98 S. W. 715, 11 Ann. Cas. 428, 118 Am. St. Rep. 37), to abandon his homestead. This results from the fact that, as head of the family, he has the right to determine where his home shall be. That the husband has the right to abandon his homestead without obtaining the consent of his wife is settled by the decisions of this court in the cases of *Newman* v. *Jacobson,* 108 Ark. 297, 158 S. W. 134; *Pipkin* v. *Williams,* 57 Ark. 242, 21 S. W. 433, 104 Am. St. Rep. 241; *Brown* v. *Brown,* 104 Ark. 313, 149 S. W. 330; *Stewart* v. *Pritchard,* 101 Ark. 101, 101 S. W. 505, 37 L. R. A., N. S., 807; *Farmers' Bldg. & Loan Ass'n* v. *Jones,* 68 Ark. 76, 56 S. W. 1062, 82 Am. St. Rep. 280; *Vestal* v. *Vestal,* 137 Ark. 309, 209 S. W. 273; *Brignardello* v. *Cooper,* 116 Ark. 103, 172 S. W. 1030; *Mason* v. *Dierks Lbr. & Coal Co.,* 94 Ark. 107, 125 S. W. 656, 26 L. R. A., U. S., 574; *Newton* v. *Russian,* 74 Ark. 88, 85 S. W. 407. When the homestead has been abandoned, it becomes subject to execution and the right to convey, as if it had never been the homestead. *Pipkin* v. *Williams, supra; Stewart* v. *Pritchard, supra.*

"We think the homestead has been abandoned as such by J. T. Neeley before his death, although he was residing there at the time of his death. The testimony shows that most of his household effects had been packed up, preparatory to moving, when he became ill, and that he actually vacated two rooms of the small house in which he resided, and that Powell had moved into these rooms and had taken possession of the place in the lifetime of J. T. Neeley. In other words, Neeley had surrendered possession, and Powell had occupied and taken possession."

We think the preponderance of the testimony in this case is to the effect that Belle Ward joined in this oral contract with her husband to sell this 10-acre tract to her father, the appellant, and that appellant is entitled to specific performance under the conditions indicated above.

We are also of the opinion that on the facts presented here, Belle Ward is estopped to set up the alleged invalidity of this oral contract which she and her husband entered into with appellant. In 26 Am. Jur., p. 134, § 213, the textwriter says: "Again, a married woman has been held to be estopped to set up the invalidity of a contract by herself and her husband for the sale of their homestead property because of failure to comply with statutory provisions, where the purchaser has taken possession, paid the purchase price, and made valuable improvements with the knowledge and consent of the wife." And in support of the text there is cited a well-reasoned case from the Idaho Supreme Court. (*Grice* v. *Woodworth,* 10 Idaho 459, 80 P. 912, 69 L. R. A. 584, 109 Am. St. Rep. 214). In that case there was presented the question whether the husband and wife could be compelled to convey land under an oral contract which they claimed as their homestead under statutes affecting the conveyance or incumbrances of a homestead by a married person and the manner in which such homestead might be abandoned, similar in effect to our own statutes on the subject. (§§ 7178-7181, Pope's Digest.) There the court held, quoting headnotes one and two: "(1) Where W. and W., husband and wife, enter into an oral contract for the sale of their homestead, and the purchaser takes possession thereof, and pays the purchase price, and makes valuable improvements thereon, all of which is done with the full knowledge and consent of the wife, the purchaser is entitled to a decree requiring them to convey said premises to him. (2) The provisions . . . of the Revised Statutes of 1887 were enacted for the purpose of protecting the homesteads and other rights of married persons—particularly the wives—and were not intended to operate as a shield to relieve against fraudulent transactions on their part." And in the opinion the court said: "The verbal agreement for the transfer of the homestead in question was assented to by both husband and wife, and was followed by change of possession, and permanent improvements placed thereon by the purchaser, and a payment of the purchase price. Those acts operated to transfer the equitable title to

the appellant. That being true, a court of equity will compel the respondents to convey the legal title to the appellant."

Accordingly, the decree is reversed, and the cause remanded with directions to proceed in conformity with this opinion.