CARPENTER *v.* FRANKLIN.

5-1422                                    308 S. W. 2d 829

Opinion delivered January 13, 1958.

*Talley & Owen* and *Howell, Price* and *Worsham,* by *Dale Price;* for appellant.

*No brief filed for appellee.*

SAM ROBINSON, Associate Justice. This suit was filed by appellee, George Franklin, July 7, 1955, contending that he entered into an oral contract to purchase a lot in North Little Rock owned as an estate by the entirety by Tom and Margaret Williams. A three-room house was situated on the property; the agreed

purchase price was $175.00, to be paid in installments, bearing no interest. Franklin further contends that he entered into possession of the property immediately upon consummation of the agreement and had lived there since that time; that he completed paying for the property in 1952, but that a deed was not made to him at the time by Margaret Williams because of her physical condition, she being 83 years of age. Prior to that time Tom Williams had died. Margaret Williams died November 3, 1954, and this suit was filed by Franklin against Charles L. Carpenter, administrator of Margaret Williams' estate, and against Henry Harris, Louis Harris, and Hattie Williams, alleged heirs of Margaret Williams. The complaint alleges the oral contract to purchase, coupled with delivery of possession and payment of the purchase price, and also asserts title by adverse possession. Charles L. Carpenter, the administrator of Margaret Williams' estate, Henry Harris and Louis Harris filed answers denying allegations of the complaint; Hattie Williams filed an answer in which she admits the allegations in the complaint and states:

"I state that I have personal knowledge of the transaction alleged in the complaint of the plaintiff between MARGARET WILLIAMS, now deceased, and GEORGE FRANKLIN, and that I was present when the property was sold to GEORGE FRANKLIN and saw the purchase price delivered to the said MARGARET WILLIAMS."

It developed that Hattie Williams is not the daughter of Margaret Williams, but the daughter of Tom Williams by a previous marriage, and since Margaret Williams had, by survivorship, become absolute owner of the estate by the entirety, she is not an heir; therefore, she had no potential interest. But this fact was not known at the time Hattie filed her answer. There was a decree in favor of George Franklin; the administrator and Henry Harris and Louis Harris have appealed.

We do not think that Franklin acquired title to the property by adverse possession, because according to the undisputed testimony he did not claim title to the

place until 1952, when he says he completed paying for it. He was not holding the property adversely up to that point; he was in possession either as a tenant or under an agreement of purchase. According to appellants' contention, Franklin was there as a tenant. According to appellee, he had possession by reason of the purchase agreement. But in any event, he was not holding adversely.

Now comes the proposition of whether Franklin proved by sufficient evidence his alleged oral contract to purchase. The alleged delivery of possession, payment of the purchase money, and the making of improvements, if true, would take the transaction out of the Statute of Frauds. *McKenzie* v. *Rumph,* 171 Ark. 791, 286 S. W. 1022; *Nicholas* v. *Ward,* 205 Ark. 318, 168 S. W. 2d 1095.

We believe that Franklin proved his case by the required weight of the evidence, notwithstanding his own testimony pertaining to the transaction must be disregarded because of the "dead man's statute". Franklin moved into the house on the property in 1940. Later he was joined by his brother, Booker. There is a conflict in the evidence as to just what the agreement was whereby George was given p o s s e s s i o n of the property. George contends there was an agreement whereby he bought the property for $175.00, to be paid in installments as he could pay it. Appellants contend that Margaret merely let George and his family live there in consideration of George's doing chores for her. George's father also came to live on the property, as did Booker's wife. Appellants are supported in their contention by the testimony of several witnesses as to statements made by Margaret in the presence of George indicating George was merely a tenant at the sufferance of Margaret, and that she was dissatisfied with his failure to do the required chores, and that Margaret also complained that George had mortgaged the property and she had the burden of paying off the mortgage.

On the other hand, George produced witnesses who claimed that they were present when the agreement was

made to purchase the property. He also introduced, as acknowledgment of money paid on the purchase price, receipts which another witness testified were given to Booker, who was helping George pay for the property. If George's witnesses are to be believed, undoubtedly there was a sale. On the other hand, if appellants' witnesses are correct in their version of the statements that were made by the parties along through the years, then in all probability there was no sale. But there are circumstances that weigh heavily in George's favor. Margaret and Tom Williams bought the property in 1927 from Grover T. and Ruby J. Owens for the consideration of $175.00. It will be recalled that 1927 was prior to the great depression, which later depressed the price of real estate. The evidence is that George agreed to pay $175.00 for the property in 1940. At that time real estate had not completely recovered from the depression, and if $175.00 was a reasonable price when Margaret and Tom bought it in 1927, it was in all probability a reasonable price in 1940 when they sold it.

Next, receipts were produced showing money paid to Margaret by Booker, the brother of George; there is no evidence in the record to indicate that Booker would be paying Margaret money for anything unless it was something in connection with the property. Incidentally, none of the witnesses produced by either side stated there was ever any understanding between the parties that rent was to be paid. A receipt given on December 24, 1952, for $20.00, is marked "paid in full".

Henry Harris, nephew of Margaret Williams, and one of the appellants, testified that Margaret Williams had stated that George claimed to have bought the property but was too lazy to pay for it. George has lived on the property since 1940 and there is not any evidence to the effect that he was supposed to pay rent. In 1945 the tax record was changed to show George as the owner. He redeemed the property from sale for the taxes of 1947 and 1948 and paid the taxes on the property in his name thereafter. According to the undisputed evidence, he mortgaged the property on one occasion for $300.00. Ordinarily, a person does not mortgage prop-

erty that someone else owns. George built a room on the house, and covered the house twice.

Margaret never did record the Owens deed. Jewell Godfrey testified that she saw Margaret, who was then 83 years of age, turn the deed over to George in 1952. George recorded the deed in that year, had it in his possession, and introduced it at the trial. He says that due to her advanced age Margaret was unable to go to town and execute a deed. Margaret was an old colored woman, and George is an old colored man. George is practically illiterate, and it does not appear that he would have known what the Owens deed was unless it had been explained to him.

When all the evidence is taken into consideration, we believe that George has met the heavy burden of proving his oral contract to purchase, that he was given possession, and that he paid for the property, the consideration being $175.00, which he paid over a period of twelve years.

Affirmed.