### In re Charlene Ann PARO.

### No. 4:03–bk–23353.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

April 10, 2007.

Ms. Phyllis McKenzie, attorney for LandNPulaski.

Mr. Jack Dickerson, Hot Springs, AR, attorney for Debtor.

Ms. Joyce Bradley Babin, U.S. Trustee, Little Rock, AR.

### MEMORANDUM OPINION AND ORDER GRANTING LIMITED RELIEF FROM STAY (GRANTING IN PART AND DENYING IN PART LANDNPULASKI'S MOTION FOR RELIEF FROM STAY)

AUDREY R. EVANS, Bankruptcy Judge.

On March 13, 2007, the Court heard the *Motion for Relief From Stay Filed by LandNPulaski, LLC* ("**Motion for Relief**"). Phyllis McKenzie appeared on behalf of LandNPulaski, LLC ("**LandNPulaski**"); Jack Dickerson appeared on behalf of the Debtor, who was also present; and Jeffrey Ellis appeared on behalf of the standing Chapter 13 Trustee, Joyce Bradley Babin. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), and the Court has jurisdiction to enter a final judgment in this case.

LandNPulaski seeks relief from the automatic stay so that it may pursue possession of certain real property located at 4014 Vinson Road, Little Rock, Arkansas (the "**Property**") which it purchased at a public auction of tax-delinquent properties held by the State of Arkansas's Commissioner of State Lands (the "**State**"). The Debtor resides in a mobile home on the Property, and contends that she has an equitable interest in the Property by virtue of an oral rent-to-own contract entered into in 1999 with the record owner, Ms. Rose Davis (formerly Rose Marie Jones and hereinafter referred to as "**Jones–Davis**" unless otherwise noted). At the hearing on this matter, Debtor's counsel requested that the Court continue the automatic stay as to the Property to allow the Debtor to challenge LandNPulaski's title to the Property in State Court. In response, LandNPulaski maintained that it believes the evidence showed it properly obtained title to the Property, but that in the event the Debtor were allowed to pursue a challenge in State Court, LandNPulaski's counsel requested that the stay be lifted to allow LandNPulaski to defend itself against Debtor's challenge in State Court.

## FACTS

Debtor filed bankruptcy on November 5, 2003. In her schedules, she listed the Property as exempt real property with a value of $39,000 with a $9,000 secured debt owed to Rose Davis, 3606 Vinson Road, Little Rock, Arkansas. Debtor's chapter 13 plan did not propose to pay this debt; however, Debtor continued to make the monthly payments directly to Jones–Davis. Debtor testified that she moved into and began purchasing the Property from Jones–Davis on a "rent-to-buy" basis in 1999, and had already paid most of the $39,000 agreed price at the time of the hearing (two and half years into her Chapter 13 plan).[1] Debtor admitted that she and Jones–Davis had no written agreement regarding her purchase of the Property. Debtor testified that she made significant improvements to the Property including new underpinning, a new roof, new plumbing, a new bathroom, removing an old bathroom, removing walls, and removing trees from the Property.

Jones–Davis allegedly failed to pay the property taxes on the Property, and the Property was certified to the State on March 26, 2003. The State first sent a notice to "Rose Marie Jones" at 4014 Vinson Road on June 5, 2003, informing Jones–Davis that the Property had been certified to the State for delinquent taxes; that notice was returned and marked "forwarding address expired." The State then sent a notice to "Rose Marie Jones" at 3412 N. Poplar Street, N. Little Rock, Arkansas on February 8, 2005, informing Jones–Davis that the Property was scheduled for sale on July 7, 2005.[2] According to Lisa Pelton, the Director of Real Property Sales for the State, the new address was found on the Pulaski County Tax Assessor's tax assessment card for the Prop-

---

1. Receipts entered into evidence (for the sole purpose of showing her payment history) reveal that Debtor has paid Jones–Davis at least $38,500.

2. Under *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), when the notice comes back undeliverable, the State must try again (discussing Ark.Code Ann.

§ 26–37–301). However, the State is required to send only one notice to the record owner at the record owner's last known address, and the owner is charged with keeping a correct address on file with the tax collector under Ark.Code Ann. § 26–35–705. *See generally Mays v. St. Pat Properties, LLC*, 357 Ark. 482, 182 S.W.3d 84 (2004).

erty.[3] A certified return receipt was signed by a "Rose M. Jones" and returned to the State.[4]

LandNPulaski purchased the Property from the State at a public auction held July 7, 2005, for a total of $2,920.50 (representing both the bid amount of $2,300.00 and the delinquent taxes of $620.50). On July 11, 2005, the State sent "Rose Marie Jones" another notice at the Poplar address in North Little Rock, informing her that the Property had been sold, and she had thirty days to redeem the Property by paying the delinquent taxes. Upon the expiration of Jones–Davis' right of redemption on August 11, 2005, the State issued a Limited Warranty Deed transferring the Property to LandNPulaski. According to Pelton, the Debtor was not provided notice of these proceedings because she had no recorded interest in the property. *See* Ark.Code Ann. § 26–37–301(a)(2) (providing for notice to interested parties), and § 26–37–301(c) (defining "interested party" as "any person . . . holding title to or an interest in the property by virtue of a bona fide recorded instrument at the time of certification to the Commissioner of State Lands").

LandNPulaski subsequently filed a quiet title action in the Circuit Court of Pulaski County, Arkansas (CV–2005–015786) (the "**Quiet Title Action**"), and was awarded quiet title to the Property on February 21, 2006. It was determined in that action that "Rose Marie Jones", her unknown spouse, unknown surviving spouse and un-known heirs had no further right, title, interest, equity or ownership in the Property. The Decree Quieting Title does not describe the notice provided to Jones–Davis or the occupant of the Property (other than to say that the Defendants had been served by Warning Order and that the Notice of Quiet Title Action had been published). John Ryles, a member of LandNPulaski, testified that he had no personal knowledge of how notice was effectuated in the Quiet Title Action. Although the Decree Quieting Title found (in paragraph 47) that "no individuals, entities, organizations, *occupants* or others have appeared, answered or claimed any right, title or interest in and to the real properties described hereinabove . . ." (emphasis added), the Debtor was not aware of the Quiet Title Action.

In August 2006, LandNPulaski sent a letter to "Rose Marie Jones or Current Occupant" at the Property's address (4014 Vinson Road) requesting a meeting. Ryles testified that the letter came back marked "no mail receptacle." He testified that a follow-up letter to Jones–Davis at the same address was also returned and marked "no mail receptacle." Debtor testified that she had no mailbox because vandals repeatedly knocked it down, and she used a post office box instead. Ryles testified that he did not meet Debtor or know that she lived there until November 15, 2006, when he visited the Property. At that time, Debtor informed him that she was purchasing the Property from Jones–Davis.

---

3. How the tax assessor obtained this address was not explained.

4. The Court notes that the Rose Marie Jones at Poplar Avenue in North Little Rock is most likely not the same Rose Marie Jones who owned the Property at 4014 Vinson Road. The Court bases this observation on the testimony of Debtor that Jones had already married Larry Davis in 1999, taken the name of Davis, and moved in with him at 3606 Vinson Road. Further, the Debtor had no knowledge of Jones–Davis ever residing on Poplar Avenue in North Little Rock. Finally, the signature on the return receipt card from Poplar Avenue does not match or even resemble Rose Marie Jones' signature on a redemption deed from the mid–1990s in which she redeemed the Property.

## DISCUSSION

This case presents a number of difficult issues under Arkansas law. The Debtor being in the middle of a Chapter 13 bankruptcy case only complicates these issues. However, because state law issues predominate and control what property Debtor brought into her Chapter 13 estate, the Court must first determine whether Debtor has an interest in this Property that is protected by the automatic stay, and if so, what relief to Debtor and LandNPulaski is appropriate. In sum, the Court has determined that upon filing bankruptcy, the Debtor had an equitable interest in this Property, having acquired this interest from Jones–Davis who sold her the Property. To what extent Debtor's equitable interest was subsequently cut off by the tax sale, of which she had no actual notice, is even more difficult. The question becomes who has superior title to the Property? A third-party purchaser at a State tax sale of which Debtor had no notice, or the Debtor in possession of the Property

with an unrecorded interest in the Property? Ultimately, these questions should be determined by the State Court that quieted title to this Property in LandNPulaski.[5] Because the statute of limitations under both the tax sale provisions and the quiet title provisions of the Arkansas Code remain open, Debtor may still challenge the tax sale and/or the Quiet Title Action in State Court. Accordingly, and for the reasons described more fully below, this Court conditionally lifts the stay to allow the parties to determine who has title to the Property in State Court.[6]

### Debtor's Equitable Interest in the Property & The Part Performance Exception to the Statute of Frauds

 Although Debtor admittedly has no recorded interest in the Property, and no written agreement with Jones–Davis to purchase the Property, it is well-established in Arkansas law that an oral contract to purchase realty may be enforceable under the part-performance exception to the statute of frauds.[7] The Arkansas

5. Although Debtor's counsel argued that the tax sale and Quiet Title Action were void as taking place in violation of the automatic stay, this Court need not decide that issue given that Debtor has independent grounds to attack the tax sale and Quiet Title Action in State Court. Ultimately, it is the State Court that should determine title to the Property—if what has already occurred in State Court were merely voided, further action would be required to afford the parties with any real and final relief (such as quieting title in either party). For this Court to fashion such relief, first an Adversary Proceeding would need to be filed in accordance with Bankruptcy Rule 7001 (requiring that actions to determine an interest in property be filed as adversary proceedings), and if such a proceeding were filed, this Court would have the option of abstaining in favor of the State Court under 28 U.S.C. § 1334(c)(1). Allowing the State Court to determine these property issues now avoids this potentially expensive and lengthy process.

Apart from voiding an order because it violates the automatic stay, this Court cannot overturn the State Court's Decree Quieting Title. "Under [the Rooker–Feldman] doctrine, lower federal courts, including bankruptcy courts, do not have subject-matter jurisdiction over challenges to state court decisions in judicial proceedings, ..." *In re Hoffinger Industries, Inc.* 329 F.3d 948, 950 (8th Cir.2003) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *In re Ferren,* 203 F.3d 559, 559–560 (8th Cir.2000)).

6. The stay may be lifted "for cause" to allow litigation involving the debtor to proceed in a nonbankruptcy forum under certain circumstances. *In re Blan (Blan v. Nachogdoches County Hospital),* 237 B.R. 737 (8th Cir. BAP 1999) *(citing* H.R.Rep. No. 95–595, at 341 (1977); S.Rep. No. 95–989, at 50 (1978)).

7. The statute of frauds, Ark.Code Ann. § 4–59–101(a)(4), provides, in part, as follows:
(a) Unless the agreement, promise, or contract, or some memorandum or note there-

Court of Appeals has described the part-performance exception to the statute of frauds as follows:

> We recognize, of course, that partial performance of a contract by payment of a part of the purchase price and placing a buyer in possession of land pursuant to an agreement of sale and purchase is sufficient to take the contract out of the statute of frauds. *Johnston v. Curtis,* 70 Ark.App. 195, 16 S.W.3d 283 (2000); *Langston v. Langston,* 3 Ark.App. 286, 625 S.W.2d 554 (1981); *Sossamon v. Davis,* 271 Ark. 156, 607 S.W.2d 405 (Ark.App.1980). The possession of the property by the purchaser, together with the making of valuable improvements on the property, has also been held sufficient to take the agreement out of the statute of frauds. *French v. Castleberry,* 238 Ark. 1038, 386 S.W.2d 482 (1965); *Harrison v. Oates,* 234 Ark. 259, 351 S.W.2d 431 (1961); *Phillips v. Jones,* 79 Ark. 100, 95 S.W. 164 (1906). The improvements must be more than routine maintenance. *French, supra.* It is necessary to prove both the making of the oral agreement and its part performance by clear and convincing evidence. *Johnston v. Curtis, supra.*

*Smith v. Malone,* 83 Ark.App. 99, 103–104, 117 S.W.3d 643, 646 (Ark.App.2003). *See also Carpenter v. Franklin,* 228 Ark. 512, 308 S.W.2d 829 (1958) ("The alleged delivery of possession, payment of the purchase money, and the making of improvements, if true, would take the transaction out of the Statute of Frauds, Ark. Stats. § 38–101 et seq."); *Chavis v. Jackson,* 221 Ark. 912, 256 S.W.2d 553 (1953) ("... Jackson was in possession of the property at the time Chavis obtained the deed from the state, and he has at all times since then had actual possession. He paid the purchase price, paid the taxes for one year, and put a new roof on the house. This was sufficient to render the statute of frauds inapplicable."); *Phillips v. Jones,* 79 Ark. 100, 95 S.W. 164, 166 (1906) ("The complaint in this case alleges that the plaintiff remained in possession of land, paid part of the purchase price and a portion of the taxes, and made valuable improvements. These acts, taken together, constituted such part performance as took the case out of the statute of frauds.").

■ Further, Arkansas courts have long charged purchasers of real property with notice of the equitable rights of a possessor of such property. The Arkansas Supreme Court has stated,

> 'Ordinarily, possession by a person under a contract of purchase, though unrecorded, is notice of his equitable rights and interests in the property. Actual possession is evidence of some title in the possessor, and puts the subsequent purchaser or mortgagee on notice as to the title which the occupant holds or claims in the property. Generally, actual, visible and exclusive possession is notice to the world of the title and interest of the possessor in the property, and

---

of, upon which an action is brought is made in writing and signed by the party to be charged therewith, or signed by some other person properly authorized by the person sought to be charged, no action shall be brought to charge any:

. . . . .

(4) Person upon any contract for the sale of lands, tenements, or hereditaments, or any

interest in or concerning them;

it is incumbent upon the subsequent purchaser or mortgagee to make diligent inquiry to learn the nature of the interest and claim of such possessor; and if he does not do so, notice thereof will be imputed to him. (Citing cases.) . . .'

*Modern Am. Mortg. Corp. v. Nelson,* 250 Ark. 928, 933, 469 S.W.2d 124, 127 (1971) (quoting *American Bldg. & Loan Assn. v. Warren,* 101 Ark. 163, 141 S.W. 765 (1911)) (but see dissent).

■ In this case, it is uncontested that the Debtor has possession of the Property. Further, the Debtor testified, and the Court fully credited her testimony, that she had an agreement to purchase the Property from Jones–Davis for the sum of $39,000. The receipts provided by the Debtor show that she has paid at least $38,500, and notations on the receipts indicate that the payments were for the purchase of the property and not rent.[8] Further, Debtor testified that she had made significant improvements to the Property, such as a new roof, new underpinning, and a new bathroom among other things. While Ryles testified that he believed the improvements devalued the Property, the Debtor explained that she was in the midst of making some of those improvements when Ryles visited the Property, and overall, the Court believes Debtor did in fact improve the Property. The Court finds that the Debtor has shown by clear and convincing evidence that she had an oral agreement to purchase the Property, has possession of the Property, has paid the bulk of the purchase price on the Property, and has made improvements to the Property. *See e.g., Chavis v. Jackson,* 221 Ark.

at 914, 256 S.W.2d 553 ("These written receipts, along with the testimony constitute evidence which is clear, cogent, and convincing that the payments were not by way of rent, but were made on an agreed purchase price."). Accordingly, Debtor has an equitable interest in this Property under State law (that equitable interest being the right to sue Jones–Davis for title to the Property). The question then becomes whether her equitable interest has been cut off by the tax sale to LandNPulaski or the Quiet Title Action purporting to vest clear title in LandNPulaski.

LandNPulaski cites two cases in support of its argument that whatever rights Debtor may have had in the Property have been cut off by the tax sale and the expiration of the redemption period. LandNPulaski cites *Johnson v. First Nat. Bank of Montevideo, Minn.,* 719 F.2d 270 (8th Cir. 1983), and *In re Froehle,* 286 B.R. 94 (8th Cir. BAP 2002), for the proposition that Debtor's only interest in the Property could be that of Davis' right of redemption to the Property, which had expired, and was not tolled by the automatic stay. However, those cases are inapposite— while the Eighth Circuit held that the automatic stay does not toll the statutory redemption period in connection with real estate mortgage foreclosures, and the BAP held that a chapter 13 plan could not extend the statutory redemption period, this Court is not holding that the automatic stay has tolled the redemption period or that the redemption period is otherwise extended; rather, the Court holds that even if no bankruptcy had been filed, the Debtor would still have rights today under State law to file suit to set aside the tax sale and the Decree Quieting Title in

---

8. Again, the Court accepted these receipts into evidence for the purpose of showing the payment history; it was not contended that the receipts were in fact the writing evidenc-ing the oral agreement to purchase the property. However, the notations on the receipts support Debtor's testimony that she was purchasing the property and not renting.

LandNPulaski, as described more fully below.

### The Tax Sale

The statutes governing the sale of tax-delinquent real property codified at Ark. Code Ann. § 26–37–101, *et seq.* (the "**Tax Sales Statutes**") do not require that notice of an upcoming sale of tax-delinquent property be provided to an occupant of such property. *See* Ark.Code Ann. § 26–37–301(a)(2) (providing for notice to interested parties), and § 26–37–301(c) (defining "interested party" as "any person . . . holding title to or an interest in the property by virtue of a bona fide recorded instrument at the time of certification to the Commissioner of State Lands"). However, the Tax Sales Statutes do not clearly vest good title in the purchaser of a land sale. Rather, the State or the purchaser must take further steps to confirm and quiet title.

■ Ark.Code Ann. § 26–37–101(c) provides, "[u]pon receipt of the certification, title to the tax-delinquent lands shall vest in the State of Arkansas in care of the Commissioner of State Lands." However, another provision of the Arkansas statutes provides for confirmation of title in the State which would "inure to the benefit of any purchaser, donee, or redemptor of the property." Ark.Code Ann. § 26–38–201.[9] Pursuant to Ark.Code. Ann. § 26–38–206(a),

The decree of the chancery court confirming the forfeiture and conveyance to the state of real property shall operate, except only as expressly provided in this section, as a complete bar, both at law and in equity, against any and all persons, firms, corporations, quasi-corporations, associations, trustees, and holders of beneficial interests who may hereafter assert or defend claims to the real property and as a vesting of the complete and indefensible title to the real property in the state and its grantees in fee simple, free and clear of all such claims.

It is not alleged that the State filed such an action in this case. Rather, LandNPulaski filed the Quiet Title Action, discussed below. Because the Tax Sales Statutes do not quiet title in the State or LandNPulaski, the tax sale alone has not cut off Debtor's equitable interest in the Property. Further, pursuant to Ark.Code Ann. § 26–37–203(b)(1), there is generally a two-year statute of limitations for bringing a cause of action to contest the validity of a conveyance of tax-delinquent land, and that time has not yet run, such that Debtor may still contest the tax sale in State Court.

### The Quiet Title Action

Although LandNPulaski filed a quiet title action and obtained a Decree Quieting Title, Debtor may challenge that decree. The Decree Quieting Title does not cite the statute authorizing the action. The

9. Ark.Code Ann. § 26–38–201 provides:
 (a) Whenever any real property, sectional or town or city lots, has been forfeited to the State of Arkansas and conveyed by certification to the Commissioner of State Lands for the nonpayment of taxes, the state may file a suit for confirmation of title in the chancery court wherein the real property lies, requesting that the title to the real property be confirmed and quieted in the State of Arkansas, in care of the Commissioner of State Lands, in fee simple.

 (b) Suit to confirm title by the state may be filed at any time subsequent to the conveyance by certification. Further, the state may elect to file for confirmation subsequent to conveyance from the state to any purchaser, donee, or redemptor. In the event confirmation is filed following a conveyance from the state, the decree of confirmation shall inure to the benefit of the purchaser, donee, or redemptor of the lands.

Arkansas statute providing for purchasers at tax sales to quiet and confirm their title is found at Ark.Code Ann. § 18–60–601,[10] which provides:

> The purchasers, or the heirs and legal representatives of purchasers, of lands at sheriff's sales or those made by the county clerks, or by the Commissioner of State Lands, or from levee or drainage improvement districts, who have acquired title by purchase at the sale held by the sheriff or by foreclosure proceedings for taxes due the districts, in pursuance of any of the laws thereof, or those made by the order, decree, or authority of any court of record, may protect themselves from eviction of the lands so purchased, or from any responsibility as possessors of them, by proceeding in the manner provided in this subchapter.

However, a decree obtained under this provision, "shall not be valid for any purpose as against the owner of the land, his heirs or assigns, who was, at the time of the decree rendered, in actual possession of it, unless he or she is made a party to the action by personal service of notice therein." Ark.Code Ann. § 18–60–608(b). It 'has been held that a person who has contracted to purchase land and is in actual possession of such land may attack a decree quieting title to such land because such person was not personally served. *See Heinen v. Dixon,* 236 Ark. 1, 364 S.W.2d 153 (1963) (interpreting identical provision in prior law). Further, pursuant to Ark.Code Ann. § 18–60–607(a), a confirmation decree is not valid unless the owners of the tax title (or those under whom they claim title) have paid the taxes on the property for at least two years *after* the expiration of the right of redemption. *See generally Fulkerson v. Calhoun,* 58 Ark.

App. 63, 946 S.W.2d 714 (1997); *Porter v. Tallman,* 68 Ark. 211, 56 S.W. 1071 (1900) (decision under identical provision in prior law). In this case the redemption period expired on August 11, 2005, and the decree quieting title was entered in February 2006. Accordingly, Debtor has ample grounds to collaterally attack the Decree Quieting Title, and the statute of limitations remains open for Debtor to do so. *See* Ark.Code Ann. § 18–61–106.

## CONCLUSION

For the reasons set forth herein, the Court finds that Debtor has an equitable interest in the Property under Arkansas law, and her rights to enforce that interest have not been conclusively cut off by either the tax sale or the Quiet Title Action. Accordingly, it is inappropriate to lift the automatic stay to allow LandNPulaski to proceed in State Court to evict Debtor from the Property. Rather, the Court grants relief from the automatic stay to both parties to allow the parties to determine who has superior title to the Property in State Court. The Court further finds that relief from the automatic stay is appropriate to allow all issues regarding the legitimacy of the tax sale and the Quiet Title Action to proceed in State Court. Relief from stay is not granted to allow LandNPulaski to take possession of the Property; rather, the automatic stay shall remain in place with respect to the Property until the Debtor's interest in the Property is finally determined in the State Court. If it is determined in State Court that Debtor has no legal or equitable interest in the Property, LandNPulaski may seek relief from stay to have the Debtor evicted from the Property. For the reasons stated herein, it is hereby

---

**10.** Another provision for quieting title is found at Ark.Code Ann. § 18–60–501, *et seq.* It is not applicable here because an action under that provision must be brought by one in actual possession of the property.

**ORDERED** that LandNPulaski's Motion for Relief is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED.**