MONTGOMERY v. DANE.

Opinion delivered December 17, 1906.

HOMESTEAD—ABANDONMENT BY HUSBAND—RIGHTS OF FAMILY.—After impressing the homestead character upon his dwelling place, a husband can not, by deserting his family and abandoning the homestead, deprive them of its protection, without furnishing them another home, so long as they seek to continue to reside in such home.

Appeal from Randolph Chancery Court; *George T. Humphries*, Chancellor; affirmed.

*J. T. Lomax*, for appellant.

1. It was error to transfer the case to equity. The only issue raised by the pleadings was whether the land was the homestead of Elijah Dane, and that defense could have been interposed at law.

2. If the land was the homestead of appellee and her husband, it was abandoned when they separated, and each moved away from the land.

*Witt & Schoonover*, for appellant.

1. The appeal should be dismissed for failure of appellant to file a proper transcript.

2. The appellant having failed to make an abstract setting out the material parts of the pleadings and evidence, as required by rule 9, the judgment should be affirmed. 57 Ark. 304; 75 Ark. 571; 76 Ark. 217; 80 Ark. 19. In any event the costs of the appeal should be taxed against the appellant. 74 Ark. 320.

3. The judgment should be affirmed because it affirmatively appears from the transcript that not all of the evidence and record is included therein. 63 Ark. 513; 64 Ark. 609; 70 Ark. 409; 72 Ark. 21.

4. The homestead of a defendant in a criminal prosecution is not subject to sale under execution for fine and costs adjudged against him. Const. 1874, art. 9, § 3; 59 Ark. 211. If land be a homestead, the debtor may dispose of it as he sees fit, and no creditor can interfere. 43 Ark. 431; 52 Ark. 549; 73 Ark. 489. If Dane and appellee abandoned the homestead, it became subject to execution for ordinary debts; but his abandonment could not defeat the rights of his wife in the homestead. Unless she abandoned it also, it remained a homestead. 21 Cyc. 598; 66 Ark. 386. If the owner of a homestead and his wife convey it to a third party, to be immediately conveyed to the wife, and this is done, there is no abandonment of the homestead of the grantors therein, the wife being as much entitled to a homestead as the husband. 15 Neb. 653; 17 Neb. 626; 65 Ia. 523; Thompson on Homesteads, Par. 473.

Enforced absence from the homestead, or absence therefrom by reason of necessity, does not constitute an abandonment. If there exists the intention of returning to the homestead, it does not lose its character as such. Thompson, Homesteads, Pars. 277, 285, 280; 21 Cyc. 600; 74 Ark. 88. It is not necessary to claim homestead exemptions before sale. Kirby's Digest, § 3902. Where the husband fails to claim the exemption, the wife may do so. 59 Ark. 211.

5. The case was properly transferred to equity. If an answer tenders an equitable issue and asks affirmative relief, the case should be transferred on motion. An execution sale may be a cloud on a homestead title in some cases. 66 Ark. 382.

HILL, C. J. Montgomery sued Mrs. Dane for a tract of land. She answered, claiming ownership by a purchase from one Hamil, to whom she and her husband had conveyed, and asserting and claiming a homestead right in the property, and alleging that it was her husband's homestead at time of its sale under execution under which Montgomery purchased; that the sale was for a debt, not a lien on a homestead, and that Montgomery had acquired no title from his sale, and the same was

a cloud on her title, and alleged a redemption from the sale to Hamil, and she asked a cancellation of Montgomery's title and the quieting of her title. The cause was, after this answer and cross-complaint, transferred to equity, and prayer of cross-complaint granted, and Montgomery appealed.

The transaction with Hamil proved to be no more than a redemption of the property from a mortgage executed by herself and husband.

The case turns on whether or not the land was a homestead at the time of sale. If it was not, Montgomery's title would prevail, possibly subject to subrogation of Mrs. Dane to the Hamil mortgage; and if the property was a homestead, the deed of Montgomery, based on an execution sale under a judgment obtained on a note given for a fine and costs, should be canceled. The facts were that Dane and wife lived upon the land for many years as a home, and he had no other property, and in 1896 they separated. Both left the place, but not the county at that time. There were no children in the family, and Mrs. Dane went to a married daughter's house when they separated. One Douglass lived on the land in 1897. Whether he paid rent to Dane is not clear, but Dane went back to the land in 1898, and lived there till he mortgaged it to Hamil, and he then left the State. Mrs. Dane then took charge of the land, and rented it, and collected rents from different tenants, who occupied it until 1900, when she returned to it with her grandchildren and great grandchildren. and has since occupied it with them.

The judgment was obtained against Dane on 24th April, 1899, and execution sale took place June 15, 1901. A deed to Hamil, which was in fact a mortgage, was executed on the day before the execution sale, and subsequently, on Mrs. Dane paying the debt, Hamil conveyed to her. This was the second mortgage given Hamil. The first was when Dane left and Mrs. Dane refused to sign it, but this deed she signed on promise of Hamil that on repaying the debt he would convey to her. Dane was in Missouri when he signed this instrument, and when the sale occurred. Mrs. Dane was looking after the sale. Whether she forbade it and then asserted her homestead rights is a matter in conflict, but certainly she was on the ground, asserting her right to its occupancy as a homestead. Mr. and Mrs. Dane were not

divorced; they simply separated. In 1900 Mrs. Dane purchased a 40-acre tract, but she never made it her home.

She testified that her only reason for leaving the home place when she and her husband separated was that she could not live there alone, and had no one to stay there with her. She went to live with her married children, and lived with them temporarily till she could return to the home place. She retained control of it through tenants from the time her husband left it until she personally returned to it. She did not want to leave the place, and only left from necessity, and never intended to abandon it, is her testimony, and it is found true by the chancellor.

Under many decisions of this court, recently reviewed in *Newton* v. *Russian,* 74 Ark. 88, the temporary absence from the home with intention to return was not an abandonment by Mrs. Dane. The abandonment by Dane is a different matter, and the question is whether his abandonment of the homestead and his family will let in claims of his creditors when the wife is not joining him in the abandonment and desires to continue to reside upon it and to preserve it as the family homestead. The constitutional provisions are: "The homestead * * * owned and occupied as a residence." * * * to be selected by the owner." Const., art. 14, § § 3-5; Kirby's Digest, 3898-3900. The act of 1887 renders void any conveyance affecting the homestead with a few exceptions, unless the wife joins in the execution of it and acknowledges it, and further provides that the debtor's right to it shall not be lost by omission to select and claim it before sale, but he may select and claim it after as well as before sale and set up the homestead right as a defense when suit is brought for possession; and if he neglects or refuses to make such claim, his wife may intervene and set it up. Kirby's Digest, § § 3902, 3903. It has often been said that the protection of the family from dependence and want is the object of the homestead law; that apart from the family the debtor is entitled to no consideration. *Harbison* v. *Vaughan,* 42 Ark. 541; *Hollis* v. *State,* 59 Ark. 211. This being the controlling thought in the homestead provisions, it naturally followed that the courts have held that the abandonment or desertion of the family and homestead by the husband did not forfeit the homestead right of the family, so long as he

was acting independently and the family were seeking the shelter of the homestead.

Thompson says: "But it has been frequently decided that what amounts to an act of desertion by the husband can not have the effect of changing the home of either the husband or his deserted family. * * * The homestead character was held to remain as long as the wife manifested an intention to remain and not abandon the home. And even where the husband's removal of the furniture compelled her to live at another place, and her intention to remain was only evinced by giving her personal attention to the house, still there was no abandonment." Thompson on Homestead and Exemptions, § 277.

If written of this case, the statement above quoted could not have been more in point, and this text does not come as a new doctrine, for it was expressly approved in *Hall* v. *Roulston,* 70 Ark. 343, and *Newton* v. *Russian,* 74 Ark. 88, and approved in principle in *Hollis* v. *State,* 59 Ark. 211. See, also, *Moore* v. *Dunning,* 29 Ill. 130, s. c. 81 Am. Dec. 301, and note, which case was approved in the Hollis, Roulston and Russian cases.

The principles of these decisions control here. Whether the act of the husband be a separation mutually agreed to or an abandonment, the controlling factor remains—he is not acting for the family but for himself in derogation of the family rights, and the whole object of the homestead law would be defeated if the homestead impressment was swept away by the act of the husband. Indirectly the husband could convey his homestead by simply quitting his family and letting in the sheriff when the policy of the law and the express statute of 1887 is to prevent that very situation. Where the wife or family refuse to obey the husband and father in leaving the homestead when he, in pursuance of his privilege as head of the family, seeks to take his family elsewhere, another question is presented, and one not before this court in this case.

It has been argued that *Pipkins* v. *Williams,* 57 Ark. 243, *Sidway* v. *Lawson,* 58 Ark. 117, and *Farmers' B. & L. Assn.* v. *Jones,* 68 Ark. 76, conflict with this conclusion; but far from it. In *Pipkins* v. *Williams,* Mr. Justice Hemingway, for the court, said: "When the homesteader, with his family, abandoned the land as a homestead, it became liable to attachment for his debts."

The parenthetical qualification of the homesteader's right to abandon "with his family" showed that the learned justice, in applying the law to the facts of that case, had in mind that where there was an abandonment by the homesteader without his family joining in the abandonment a different question would be presented. In *Sidway* v. *Lawson* the rule above quoted was stated, but not stated fully and without the qualification of "with his family." It was not intended to change the rule in the Williams-Pipkins case, but it was merely stated in shorter form, and only so much as was pertinent to the case in hand. *Farmers' B. & L. Assn.* v. *Jones, supra,* held that the act of 1887 is a limitation upon the right of the husband to convey his homestead, but not a limitation upon his marital and parental authority to select or abandon the homestead. This is manifestly true, but it is dealing with the rights of the husband and father as head of the family to select the home, abandon and select another or select none but to live in rented houses if he sees fit. These are considerations touching the right of a head of a family to control it, and relate to him when acting for the family, not when in derogation of the rights of the family and not when he deserts or abandons his family or voluntarily separates from them. When he deserts, abandons or separates from his family, he is then no longer its head, and is no longer acting for the family, but for himself, and against the family, and then it is that the law presumes he is a wanderer without home until he returns to his duty and his family. *Moore* v. *Dunning, supra; Hall* v. *Roulston, supra; Newton* v. *Russian, supra.* In *Sidway* v. *Lawson, supra,* there is the further holding that the Legislature intended to create no new estate by the act of 1887, but prescribed the manner of executing instruments affecting the homestead, and recognized the homestead as the husband's, not the wife's, nor their joint property. This is manifestly the correct construction, and does not trench on the principle which the court is following in its conclusions herein.

The homestead being created for the benefit of the family, when the husband selects it and impresses it with the homestead character as the dwelling place of his family, then the law frees it from his debts, and he can not let in his debts against it when he separates from his family or deserts them and does not attempt

to provide them another home or dwelling place or shelter, and does not seek to take his family with him, so long as they seek to continue to reside in the only home he has provided for them. It is within the letter, and most positively within the spirit, of the homestead law to extend its beneficence to the family under these circumstances.

Judgment affirmed.

Mr. Justice McCULLOCH dissents.