Eddie J. JULIAN et ux., Appellants,

v.

V. A. ANDREWS et al., Appellees.

No. 17380.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 23, 1973.

Rehearing Denied March 23, 1973.

Hooper, Kerry, Chappell & Broiles, and David F. Chappell. Fort Worth, for appellants.

Sam Cleveland, and C. O. McMillan, Stephenville, for appellees.

## OPINION

MASSEY, Chief Justice.

The appeal is by plaintiffs from a judgment denying relief for which they prayed growing out of a sale and purchase real estate transaction with defendants; and also from the judgment decree in behalf of defendants on their cross-action, directing plaintiffs' specific performance of the obligation to purchase as return obligation for defendants' performance.

We affirm.

For convenience the plaintiffs will be treated in our discussion in the singular, or as Julian, and the defendants in the singular, or as Casena Andrews. It might be noticed that one Mary Lou Wilkerson was a named defendant and oftentimes mention of facts relative to her will be necessary, but that fact will not alter treatment of the parties in the singular.

On trial there were additional parties who were brought in as third-party defendants by Casena Andrews in a suit against them to remove the cloud upon her title to 3.79 acres of land, embracing the 1.76 acres of land which is the matter of dispute between Casena Andrews and Julian. By the judgment in the case from which the appeal was taken by Julian there was a portion thereof which was rendered in behalf of Casena Andrews against these third-party defendants in removal of the cloud on her title to the entire 3.79 acres. The "cloud" theretofore existent had been created by the record of judgment liens filed by such parties in Hood County where the land was located. In this respect the judgment became final for there was no appeal by any third-party defend-

ant. The consequent legal effect is the finality of the necessarily implied holding of the trial court that the 1.76 acres of land as to which dispute exists between Julian and Mrs. Andrews was realty which was never encumbered by any lien of any of said third-party defendants. On the matter, generally, see Texas Jurisprudence Second, topic "Quieting Title".

As we view the case on appeal the effect of finality of the judgment which quieted the title of Casena Andrews made a simple case out of one which otherwise would have been complicated. By such judgment was the fact established that at all times applicable to any element of the transaction between her and Julian relative to the 1.76 acres of land she enjoyed unencumbered title.

It was only because of what Julian considered to have been an encumbrance on Casena Andrews' title in consequence of the record of the aforementioned judgment liens that he claimed right to remedy by his suit. Casena Andrews had contracted and agreed to convey to him by warranty deed the title to the subject 1.76 acres free and clear of encumbrance and with an insured title. He alleged that on the strength of such representations, which were fraudulent and constituted actionable fraud, he had entered upon the property and erected valuable permanent improvements only to find at or immediately after the time for "closing" that the judgment liens existed in impairment of the title. His pleadings upon his damages were sufficient whether measure of damages applicable should be by rules relative to cases of complete or incomplete transactions.

On this, since the parties in their briefs are obviously in disagreement as to whether the transaction was a completed one or was executory and incomplete we take occasion to note our holding that it was executory and incomplete both as to Casena Andrews and as to Julian. As to Julian it might have initially appeared at one point that it was complete by his delivery of a $3,500.00 check representing the balance in the amount of the cash part of the transaction, but any question was eliminated when he stopped the payment of the check and left affairs in condition where such $3,500.00 remained unpaid. Though incomplete as to Casena Andrews this was because the Owners' Title Policy she was bound to deliver was by Julian agreed to be delayed for a few days after the day of "closing". Anyway, under our view of the instant case the question of whether the transaction was complete or incomplete is immaterial. Had our view been different the rules of law and equity as discussed in the Restatement of the Law, Contracts, would have had application. Therein the student is directed to Chapter 12, "Judicial Remedies for Breach of Contract", Sections 347 to 365, inclusive, with special attention to Section 360, "Specific Enforcement of Contracts for the Transfer of Land".

However, the trial court did not found its judgment on the theory we have discussed. Indeed it could not have done so because the propriety of affirmance on such theory could not have become evident until its judgment as applied to the third-party defendants became final upon their failure to perfect any appeal. The finality of judgment as applied to the third-party defendants destroyed Julian's case against Casena Andrews whether the trial court was correct in the judgment it rendered at the time or was incorrect. It might be properly said that such failure to appeal made Julian's cause of action into a moot case.

But it is also our holding, aside from the peculiar situation already considered, that the judgment of the trial court was correct in any event. There was no evidence to support findings which we can treat as an individual jury finding upon which Julian's right of recovery depended, or, peculiarly, because it is our holding that as a matter of law in view of the state of the evidence the homestead right of Mary Lou Wilkerson did continue for the period within which the liens of the third-party defendants might have attached to the property in

question after there was abandonment of his homestead right by her husband, Bobby Wilkerson. The jury finding was that the homestead of Bobby Wilkerson and his wife, Mary Lou Wilkerson, was abandoned on June 3, 1967. Such finding was disregarded by the court, on motion, and its judgment in the case was rendered to the implied effect that as applied to Mary Lou Wilkerson the homestead was not abandoned on June 3, 1967.

On June 2, 1967 Bobby Wilkerson and his wife, Mary Lou Wilkerson, possessed both the physical property and the title to what later became Casena Andrews' 3.79 acres. Though it might have been possible to have done so neither of them contested the validity or propriety of the foreclosure by A. W. Norman of a Deed of Trust Lien on the property jointly executed by them as additional security for note payment due Norman for supplies furnished subject to Mechanic's and Materialman's lien. Upon the security thereof and because of default in note payments Norman caused, on September 5, 1967, a Trustee's sale under the Deed of Trust. Norman bought the property at such sale.

On June 3, 1967 Bobby Wilkerson left the premises (the 3.79 acres) and abandoned his wife and moved to Smith County. Mary Lou Wilkerson ceased to continue the work and labor in which she and her husband were engaged in the completion of their home structure. Immediately prior to Wilkerson's departure on June 3rd, both he and his wife had been residing in the home of Casena Andrews and her husband, Mary Lou's parents. The Andrews lived next door to the 3.79 acres. Casena Andrews is the mother of Mary Lou. Mary Lou continued to live with her parents after her husband's departure. By June 8, 1967 Mary Lou had filed her divorce suit. On or about that date she went to see her husband in Smith County. Reconciliation was not effected. Divorce decree was entered June 28, 1968.

That she possessed any knowledge of the fact of the September 5th foreclosure by A. W. Norman prior to June 28, 1968 was denied by Mary Lou Wilkerson. Indeed, a part of the decree of divorce consisted in the approval of a property settlement agreement by which her husband agreed "That the said Mary Lou Wilkerson shall have and hold as her separate property and estate, and there is hereby transferred and assigned to her the following community property", specifically inclusive of the realty in question.

At the very time of the divorce title purportedly rested in A. W. Norman by virtue of his purchase at Trustee's sale on September 5, 1967. Norman was not a party to the instant suit. In any event, on July 1, 1968, only a few days after the divorce of Mary Lou and Bobby Wilkerson, Norman delivered a warranty deed to the property to Casena M. Andrews, "as her separate property and estate", for the approximate amount of the indebtedness owing by the Wilkersons to Norman before the sale by trustee. There is no evidence that Casena Andrews ever acted in her daughter's behalf. The amount paid by her for Norman's deed was $5,259.49. The note secured by the Deed of Trust upon which Norman foreclosed was dated April 29, 1967 and was for $4,606.81. It was prescribed to be due and payable on or before July 29, 1967.

In Hood County, at and prior to all of the times aforementioned, there had been properly recorded and indexed abstracts of personal judgments theretofore obtained against Bobby Wilkerson totaling $15,410.-30. These were the judgment liens of the third-party defendants previously mentioned.

Casena Andrews divided what had been the 3.79 acres into three lots, one being the 1.76 acres in issue in the litigation between her and Julian. Thereon was located the uncompleted house which the Wilkersons had erected. Through a real estate dealer for Casena Andrews Julian contracted, on April 4, 1969, to buy the property at a price of $30,000.00; of which $7,000.00 would be paid in cash and balance by note

(at 7%) to be retired by monthly payments of $206.74. $3,500 was paid on April 4, 1969, at time the parties signed the contract to sell, and it was agreed that Julian should pay the remaining cash amount, $3,500.00, at time of closing. Until such time it was agreed that Julian could move his family in upon the premises and complete the construction of the home building. This he did do, and by uncontested jury finding, placed $10,888.00 in improvements upon the property.

The contract to sell the 1.76 acres contained the usual provision: "Seller agrees to furnish Warranty Deed and Owner's Title Policy to said property, which shall be conveyed free and clear of any and all encumbrances except those named herein." No encumbrance was named.

Circumstances delayed closing until July 7, 1969. On that date the parties executed Deed and Deed of Trust and Julian executed a check of $3,500.00 representing the balance of the down payment of the cash to be paid. As is customary in such cases there was "receipt acknowledged" on the face of the deed for that part of the consideration which was payable in cash. Of course the actual consideration was proper to be shown, and it was. Julian also executed the note for the amount to be financed, and a check for the first month's payment thereon. It was agreed by Julian that he would await the Owner's Title Policy, promised to be delivered within a few days' time. All the foregoing instruments were left with agent upon whom the parties jointly agreed, who promised to perform for them the filing of instruments, disbursement of payments, etc.

Almost immediately thereafter Julian received a letter written by an attorney at the request of Bobby Wilkerson, former husband of Mary Lou Wilkerson and former son-in-law of Casena Andrews, informing him of the existence of the aforementioned judgment liens. The letter stated that such liens amounted to encumbrances on the title of Casena Andrews to the 1.76 acres Julian had bought (or almost bought). Julian stopped payment on his $3,500.00 check. It remains unpaid to the present time. On August 13, 1969 he filed suit. His prayer was for specific performance of contract to convey title by delivery of warranty deed and a title policy covering the property; or in the alternative, for the sum of $32,400.00 damages.

At all times the complaint of Julian was solely because of the judgment liens of those who were later joined in the case as third-party defendants. There was never any complaint as to any element of other impediment of title, nor of any damage to him through diminishment in the value of the property and its title except as applied thereto. There was no claim of damages because of any expense to which he was put as a consequence of the circumstances aforesaid, nor was there any evidence relating thereto. The whole of the evidence upon Julian's damages related to the value of the property as promised or as represented and its diminished true market value as a consequence of the judgment liens on file. In other words he sought the difference in the value of the property were its title "unclouded" as compared to its value in its "clouded" condition when, as he contends, title vested in him on July 7, 1969.

By April 9, 1971 when there was filed that Amended Petition upon which plaintiff Julian went to trial, his prayer for relief was altered somewhat. He prayed for declaratory judgment that he receive all interest in the subject property possessed by Casena Andrews plus statutory damages of $30,000.00 (by Business and Commerce Code, Section 27.01, "Fraud in Real Estate and Stock Transactions", V.T.C.A.); alternatively for the value of improvements placed by him on the premises at $13,900.-00, and for return of all he had delivered in recission of contract; and further alternatively for damages for Casena Andrews' breach of contract to sell, in the amount of $15,000.00.

The theory of Casena Andrews' defense was that until A. W. Norman's foreclosure

the premises was the homestead of her daughter Mary Lou Wilkerson, hence unencumbered by any of the judgment liens filed of record against Bobby Wilkerson, former husband of her daughter; that she had obtained by Norman's deed the full title to the property; and that she was ready, willing and able to comply in full with the contract to sell she had entered into with Julian on April 4, 1969, and had been since time of the aborted "closing" of July 7, 1969. As affirmative relief she demanded specific performance by Julian.

The jury, by its verdict found generally that Casena Andrews represented to Julian that the property in question was free and clear of encumbrance; that such representation was wilfully made, though known to be false, to induce purchase by Julian; that Julian relied upon such representation; that the representation amounted to a material inducement of Julian to purchase; that the representation proximately caused Julian to construct valuable improvements on the premises; that in reliance upon the promise made to provide a title insurance policy Julian made valuable improvements on the property; that the fair market value of the property as represented to Julian was $30,000.00; that the actual fair market value of the property was $18,000.00; that the reasonable value of the improvements Julian placed on the property was $10,888.00; that when the Wilkersons obtained the 3.79 acres from the Andrews their intent was to use it for the purpose of a home; that when they thereafter commenced construction thereon it was with the intention of using the residence constructed as their home; that the 3.79 acres was the homestead of Bobby Wilkerson and his wife Mary Lou Wilkerson; that on January 15, 1967 the 3.79 acre tract became the homestead of the Wilkersons; that the homestead was abandoned on June 3, 1967 and that the reasonable rental value per month of the 1.76 acres from August 5, 1969 to date of the jury's verdict was $221.00.

It was as its answer to Special Issue 21 that the jury found "the homestead of Bobby Gene Wilkerson and wife, Mary Lou Wilkerson was abandoned", and by answer to Special Issue 22 that the date of such abandonment was on "June 3, 1967". As already noticed the date Wilkerson left Hood County, and insofar as he was concerned the date that the homestead was abandoned, was June 3, 1967. Were the finding of abandonment at some subsequent date we would be inclined to believe that the circumstances were such that the jury might have been entitled to find that Mary Lou Wilkerson abandoned her own homestead claim thereon. Certainly she was on notice that the note she had signed to A. W. Norman was due July 29, 1967 and nothing in the record indicates anything attempted to be done to preserve it either by that time or by the subsequent date of September 5, 1967 when the Trustee's sale was conducted.

But we have decided that any question relative thereto would be pure hypothesis and wholly immaterial. The jury, by its verdict, the findings of which Julian insists has established his right to prevail, set the date of June 3, 1967 (when Bobby Wilkerson unquestionably abandoned it as his homestead) as that when the "homestead was abandoned". There could be no subsequent date which might be held by the trial court or by this court to have been established, as a matter of law or by reason of some undisputed evidence, as that on which Mary Lou Wilkerson abandoned her homestead right.

Absence of the materiality of the jury finding is apparent, as likewise would be the fact that there was no evidence upon which there was support for the finding in prejudice of the homestead rights of Mary Lou Wilkerson, when recognition is accorded the rule of law that a husband has no right to abandon any homestead in fraud of or prejudice to his wife pursuant to action against her matrimonial right. It is only where the husband is, or is sup-

posed to be, the head of the family that he has the right to select or abandon a "homestead". Where he abandons and disclaims his status as such he might effect an abandonment insofar as his own right should pertain; but it does not follow that insofar as the wife's right is involved, absent her independent act of abandonment, that there would necessarily be an accompanying forfeiture of her homestead right. When one spouse dies the fact of his death does not operate to deprive the survivor of a homestead right theretofore existent, and the same thing is true as applied to the homestead where a husband has abandoned his wife and left the premises with intent never to return.

In accord are respectable authorities cited by defendants, as follows: Sakowitz Bros. v. McCord, 162 S.W.2d 437 (Galveston, Tex.Civ.App., 1942, no writ hist.); Korn v. Korn, 15 S.W.2d 1017 (Tex.Com. App., 1929); Commercial Nat. Bank of San Antonio v. Posey, 34 S.W.2d 678 (Austin, Tex.Civ.App., 1930, and the opinion of the Commission Appeals reversing, in part, at 55 S.W.2d 515); Bell v. Franklin, 230 S.W. 181 (San Antonio, Tex.Civ. App., 1921, no writ hist.); Murphy v. Murphy, 237 S.W. 640 (Dallas, Tex.Civ. App., 1922, writ dism.); Montgomery v. Dane, 81 Ark. 154, 98 S.W. 715 (1906); 40 C.J.S. Homesteads § 159, (Dissolution of Family Relationship)—Desertion, p. 635.

■ In view of what is above written it follows that the trial court did not err in disregarding, on motion, the jury findings that the homestead of Bobby Wilkerson and Mary Lou Wilkerson was abandoned on June 3, 1967. The finding was not, nor could it have been supported by evidence in the case as it obtained in the trial court, or in this court on appeal. Upon a disregard of the finding there would be no time established by verdict upon which title to the property existed in Bobby and Mary Lou Wilkerson at a time when both had abandoned it as the homestead. Upon such disregard the findings relative to Casena Andrews' wilful misrepresentations to Julian were likewise properly disregarded.

As heretofore noted Casena Andrews' cross-action against Julian was for specific performance of the contract of April 4, 1969. This she obtained by the judgment. Of this Julian complains on appeal. This is somewhat strange for by evidence, apparently undisputed, Julian stated his desire to retain the property. Albeit retrospectively and because of the failure of any of the third-party defendants to perfect an appeal from the judgment as applied to them any title defect was displayed as nonexistent. As a "title defect" of which a purchaser might be entitled to object before "closing", it has certainly been removed. Of course, the verdict and judgment is to the effect that the judgment liens constituted no encumbrance on the title in view of its character as homestead property to which judgment liens of the type considered do not attach.

Casena Andrews at all times has adopted the posture of one tendering full performance including supplying Julian with the promised title insurance policy. By her action in the litigation she supplied that same defense of the title which would have been the obligation of a title insurance company had the transaction been a completed one with Owner's Title Policy delivered to Julian. By presumption applicable in cases of equity she could and would have paid off the liens asserted had the judgment been against her.

There is no error in the judgment insofar as it decreed specific performance by Julian.

The entire judgment is affirmed.